THE STATE EX REL. PRETTY PRODUCTS, INC., APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Pretty Products, Inc. v.*
*Indus. Comm.* (1996), 77 Ohio St.3d 5.]

(No. 94–1845—Submitted July 24, 1996—Decided October 23, 1996.)

6

*Emens, Kegler, Brown, Hill & Ritter* and *Ronald L. Mason,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellee Industrial Commission.

*Larrimer & Larrimer, Terrence W. Larrimer* and *David H. Swanson,* for appellee Maxine Dansby.

MOYER, C.J.  This case presents the question of whether the Industrial Commission abused its discretion by finding that the claimant did not voluntarily abandon her position of employment, and that further temporary total disability compensation should be awarded.  Because of the vagueness of the commission's order, we must remand for further explanation and clarification of the reasoning supporting that order.

The receipt of temporary total disability ("TTD") compensation rests on a claimant's inability to return to his or her former job as a direct result of an industrial injury.  *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus.  However, eligibility may be compromised when the claimant is no longer employed at that job.  Once a

claimant is separated from the former position of employment, future TTD compensation eligibility hinges on the timing and character of the claimant's departure.

The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55, 58.

However, such situations are not common, and inquiry into the character of departure is the norm. While voluntary departure generally bars TTD compensation, an involuntary departure does not. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. In the instant case, the commission found that claimant's departure was involuntary. Review of the commission's order, however, is hindered because it is susceptible of several different interpretations.

For example, one possible interpretation of the commission's statement that "claimant did not voluntarily abandon her former position of employment on 3/4/91 for the reason that she did not timely submit an excuse slip from her doctor" could be that the separation was not voluntary because firings are *per se* involuntary. If this is indeed the commission's reasoning, it is wrong. As this court has recently held, the underlying facts and circumstances of each case determine whether a departure by firing may be voluntary or involuntary. *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 411, 667 N.E.2d 1217, 1219.

Another possible reading of the commission's order is that the commission modified the district hearing officer's order based on the belief that termination for unexcused absence could not support a finding of voluntary abandonment. This, too, is incorrect. In *State ex rel. Louisiana–Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469, the claimant, as in the present case, was fired for violating a policy prohibiting three consecutive unexcused absences. We held that the claimant's discharge was voluntary, stating, "we find it difficult to characterize as 'involuntary' a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." *Id.* at 403, 650 N.E.2d at 471. However, there is an important distinction between *Louisiana–Pacific* and this case. In the former, there was no evidence that the claimant's absences were due to industrial injury, while in this case there is.

8

Whether this distinction is ultimately outcome-determinative, however, cannot be decided absent clarification of the commission's reasoning.

A third possible interpretation of the commission's order is that the commission found that claimant had been fired because of her industrial injury. If that indeed was the case, a finding of involuntary departure could be sustained. *Rockwell, supra.* Again, however, without clarification, judicial review can proceed no further.

Given the possibility that any of these interpretations could reflect the commission's reasoning, the judgment of the court of appeals is reversed and the cause is remanded to the commission for clarification.

*Judgment reversed*

*and cause remanded.*

RESNICK, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent and would affirm the judgment of the court of appeals.