IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
Relator, Michael Walters, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding he voluntarily abandoned his employment and terminate temporary total disability ("TTD") compensation, and to find him eligible for TTD compensation, or, in the alternative, to direct the commission that TTD compensation could not be terminated until a later date.
This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who examined the evidence and issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court grant a limited writ, returning the matter to the commission to vacate its order denying TTD compensation and to issue a new order, granting or denying relator's appeal and addressing all material issues presented by the parties, in compliance with State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. In addition, the magistrate noted that, should the commission determine that TTD compensation must be terminated, the date of termination must be the date of the district hearing officer's hearing. Both relator and respondent-employer, CBS Personnel Services, have filed objections to the magistrate's decision. The matter is now before this court for independent review.
Objections of relator and respondent-employer to the contrary, this court agrees with the magistrate's analysis of the pertinent issues. Accordingly, for the reasons set forth in the magistrate's decision, this court hereby overrules the objections of both relator and respondent-employer and adopts the decision as its own, including the findings of fact (with a corrected date of October 9, 2000 in the fourth paragraph of the findings of fact) and conclusions of law contained therein.
For the foregoing reasons, this court issues a limited writ of mandamus ordering the Industrial Commission of Ohio to vacate its order denying TTD compensation and to issue a new order granting or denying relator's appeal and addressing all pertinent issues in compliance with Mitchell and Noll. Should the commission determine that TTD compensation must be terminated, the date of termination must be the date of the district hearing officer's hearing.
Objections overruled; limited writ granted.
BOWMAN and BROWN, JJ., concur.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS
Relator, Michael Walters, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order finding he voluntarily abandoned his employment and terminating his compensation for temporary total disability ("TTD"), and to find him eligible for TTD or, in the alternative, to direct the commission that compensation could not be terminated until a later date.
Findings of Fact:
1. On March 30, 1999, Michael Walters ("claimant") applied for a job with CBS Temporary Services ("CBS").
2. Claimant was hired and assigned to perform work for a construction company. On April 9, 1999, claimant's foot was crushed in an industrial accident, and the foot was later amputated. A workers' compensation claim was allowed for this injury and also allowed for an adjustment disorder with mixed emotional features of depression. TTD compensation was awarded.
3. On September 5, 2000, an investigation firm, General Corporate Investigation, Inc., reported to CBS regarding an investigation into claimant's background. The report states that claimant had several criminal convictions and incarcerations, including felony convictions.
4. On October 9, 2001, CBS notified claimant that his employment was terminated as of that date, due to falsification of his application.
5. On the application, claimant had answered "no" when asked if he had been convicted of a felony or misdemeanor in the last seven years. Claimant signed the application, affirming that the information was true and that he understood that giving false information would justify his dismissal if discovered at a later time.
6. In December 2000, CBS filed a motion requesting termination of TTD.
7. In May 2001, a district hearing officer ("DHO") granted the motion:
 The employer requests that ongoing Temporary Total Disability Compensation be terminated on the grounds that the claimant was terminated for reasons unrelated to the allowed industrial accident on or about 10/09/2000.
 Specifically, the employer argues that the claimant violated a written work place policy when he falsified his job application and the claimant was subsequently terminated on or about 10/09/2000 for this falsification. The employer argues that this termination is tantamount to a voluntary abandonment of employment.
 The District Hearing Officer finds that the claimant's falsification did violate a written workplace rule of which the claimant was made aware. Therefore, pursuant to State ex rel. Louisiana Pacific Corp. v. Industrial Commission of Ohio (06/28/1995), 72 Ohio St.3d 401, the District Hearing Officer finds that the claimant's termination does constitute a voluntary abandonment of employment and the claimant's Temporary Total Disability Compensation is terminated effective 10/09/2000, the date of the claimant's termination.
8. In June 2001, a staff hearing officer ("SHO") affirmed, noting that documents showed that claimant had previous convictions and that the written work rule was also in the handbook presented to him when he was employed. The SHO concluded:
 Therefore, * * * the claimant's termination from employment constitutes a voluntary abandonment of the claimant's employment. Therefore, Temporary Total Disability Compensation is terminated effective 10/09/2000 the date of the claimant's termination from employment based upon the 10/02/2000 letter from the employer.
9. Further appeal was denied.
Conclusions of Law:
In this original action, the first issue before the court is whether the commission abused its discretion in finding that claimant voluntarily abandoned his employment and in terminating TTD compensation as a result. The second issue is whether the commission abused its discretion in terminating TTD compensation as of the date of discharge instead of the date on which the district hearing officer heard and determined the issue of voluntary abandonment of employment.
In this action, the court is not asked to determine whether there is "some evidence" to support a finding of fact. The issues are legal in nature, regarding the interpretation of State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401.
In Louisiana-Pacific, the Ohio Supreme Court ruled that a discharge can constitute a voluntary relinquishment of employment where the worker has violated a written work rule and where the work rule or policy (1) clearly defined the prohibited conduct, (2) identified the violation as a dischargeable offense, and (3) was known to the worker or should have been known to him. Id.; see, also, State ex rel. Pretty Products, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5 (reaffirming that a claimant's conduct is not "voluntary" when causally related to the industrial injury).
Where a worker has voluntarily left his job — whether due to a resignation or a Louisiana-Pacific discharge — the worker ordinarily is not eligible for TTD compensation because the loss of wages is the result of his own choice, not the industrial injury. However, where the worker has taken a new job, he is eligible for TTD compensation if the allowed conditions cause him to lose wages at the new job, if his departure from the prior job reflects the mobility of labor rather than a willingness to be without wages for a time. State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376.
In the present action, claimant seeks to limit Louisiana-Pacific to its particular facts, which involved an injured worker who was released to return to work but failed to report, to notify his employer of the absence, in violation of a written attendance policy. Claimant argues that the holding of Louisiana-Pacific can be applied only when the worker violates a company policy after the date of his injury.
The magistrate concludes that the court should not engage in a narrow focus on whether the dischargeable offense occurred "pre-injury" or "post-injury." The rationale of Louisiana-Pacific and related decisions is that a worker will be held to accept the consequences of his actions when the consequences were known to him ahead of time or should have been, and where the worker's actions were voluntary, i.e., not caused by the industrial injury.
To hold a worker accountable for his own choices is fair and reasonable, and the commission's task is to determine what may fairly be inferred from each claimant's conduct at the time he engaged in the conduct. State ex rel. Smith v. Superior's Brand Meats, Inc. (1996),76 Ohio St.3d 408, 411 (stating that the commission must consider the underlying facts and circumstances of each case to determine whether the discharge may be deemed a voluntary departure for TTD purposes). For example, in Louisiana-Pacific it was fair to infer that the injured worker knew that he had been found medically capable of returning to work and that he also knew that if he did not report for work or call in, he would be looking for another job.
In the present case, the focus should be on the inferences that may reasonably be drawn from claimant's conduct. The timing of the violation — the fact that claimant violated his employer's written policies at the time he was applying for work is a factor but not a determinative or conclusive one.
To hold that the commission cannot ever find a voluntary abandonment of employment under Louisiana-Pacific in cases where the employer's discovery of the violation postdates the injury would result in outcomes that are contrary to the rationale of Louisiana-Pacific. For example, if an employee were engaged in a scheme of embezzlement, but the employer did not discover it until the employee was away from work recuperating from an industrial injury, the employer should not be barred from taking the usual disciplinary action, nor should the employee be immune from the normal consequences of his actions (loss of wages following discharge) simply because, in the interval between his conduct and its discovery, he sustained an industrial injury.
In other words, when an employee has violated a known, clear rule, the employer should be able to impose the normal discipline. The crucial question for the commission is the causation of the loss of wages — whether the loss resulted from claimant's exercise of free choice or from his allowed conditions.
In the present action, a finder of fact could interpret the evidence in a variety of ways. On one hand, the commission could reasonably infer that claimant, when he falsified his employment application, knew it was a dischargeable offense and therefore tacitly showed his acceptance of the consequences of discharge if and when his lie was discovered. That is, the commission could reasonably infer that claimant, when he falsified his application, showed a willingness to take his chances of being fired and experiencing a loss of wages until he could secure other work.
However, while claimant's conduct in falsifying his application may evidence a willingness to be without wages from CBS for a period of time following a discharge, his conduct did not necessarily evidence a willingness to be without wages for a lengthy period of time. The commission could reasonably infer that the claimant, when he falsified his application, accepted only that he would have to leave CBS and get another construction job if his lie was discovered and a discharge resulted.
The problem here is that, if claimant's lie had been discovered while he was working steadily and uninjured, he could have sought other employment — he could have minimized his loss of wages. Here, however, claimant was severely impaired at the time he was discharged, and he did not have the choice of minimizing his wage loss by obtaining another construction job.
Claimant directs the court's attention to the warning in Smith about the potential for abuse in allowing a "simple allegation of misconduct" to preclude TTD compensation. Smith, supra, at 411. Here, however, the record shows far more than a mere allegation of misconduct. Here, there is documentary evidence that the claimant knowingly and intentionally falsified his employment application. The employer asked plain questions on the application and warned of the consequences of false statements. Claimant stated he had no felony or misdemeanor convictions in the past seven years, contrary to documentary evidence showing that the statement was blatantly false. Thus, this case does not present the situation where an employer relies on weak, trumped-up charges to terminate employment.
This case does have troublesome aspects, however. The timing of the investigation, more than a year after claimant's serious industrial injury, raises questions. A query that leaps to mind is whether the employer was willing to forego investigations and overlook false statements as long as the worker was laboring and making money for the employer, and whether the employer decided that the lie required discharge only when the worker sustained a severe industrial injury and was receiving substantial workers' compensation benefits.
If the employer would have continued to employ Mr. Walters as long as he was healthy and able to work, and if it invoked its rule because he was involved in a serious industrial accident, then the discharge was motivated by the filing of the workers' compensation claim, and the rule violation was a pretext. A discharge motivated by the claimant's filing of a workers' compensation claim is not a voluntary abandonment of employment. See, generally, Louisiana-Pacific; Pretty Products; Smith.
In sum, it is important with matters of constructive intent to determine fairly what may be inferred from a claimant's conduct at the time he engaged in it, and the commission must adequately address and explain that matter in its decision, pursuant to its usual duty to explain its reasoning. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. When a claimant presents evidence of a pretextual discharge, the commission must address that issue in order to satisfy Noll and State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481. Where the termination of employment was causally related to the industrial accident or the filing of a workers' compensation claim, the claimant remains eligible for TTD compensation. Pretty Products, supra.
In most cases, when the employer presents evidence of a voluntary abandonment of employment, the commission simply addresses each element of proof set forth in Louisiana-Pacific. However, when a claimant raises the issue of a pretextual discharge and supports it with evidence that his discharge was causally related to the industrial injury, the commission must specifically address and resolve that issue as well.
This approach is similar to the approach required in permanent total disability ("PTD") cases where the commission is required to address only the elements of PTD unless the employer raises the defense of a voluntary departure from the work force. When that issue is raised, the commission must address whether, regardless of whether the claimant is permanently unable to engage in any sustained remunerative employment, the employer has proved that the worker voluntarily left the work force. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78.
In regard to TTD, a similar approach is logical. The commission's task in most cases is simply to determine whether claimant proved a causal connection between the industrial injury and an inability to perform the former position of employment. State ex rel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158. However, when the employer (or other party) raises the argument of voluntary abandonment of employment under Louisiana-Pacific and supports it with evidence, then the commission must address the elements of proof in Louisiana-Pacific, and must deny TTD if the loss of wages was caused by claimant's voluntary choice. See, generally, Louisiana-Pacific; Quarto Mining. If the claimant argues and presents evidence, however, that his violation of the rule was a pretext for a discharge that was causally related to the industrial injury, then the commission must determine, regardless of proof that the employee knowingly violated a written work rule, whether the employer used the violation as a pretext for discharging him and would have continued to employ him but for the industrial injury and/or workers' compensation claim.
The commission's duty to explain its rationale is well established. Given the impact of a finding of voluntary abandonment of employment, the magistrate concludes that the commission did not satisfy its duty to provide findings and conclusions on the crucial issues raised by the parties. The commission had a duty to address not only the issue raised by the employer (whether it proved the elements of Louisiana-Pacific) but also the issue raised by claimant (whether he proved his discharge was causally related to the industrial injury and that the rule violation was a pretext).
Last, if the finding of voluntary abandonment is affirmed administratively, resulting in an affirmance of the termination of TTD compensation, then the issue arises as to whether TTD may be terminated retrospectively on a date prior to the DHO hearing, or whether TTD may be terminated only as of the DHO hearing, under the reasoning articulated in State ex rel. Russell v. Indus. Comm. (1998), 83 Ohio St.3d 516.
The decision in Russell applies to disputed terminations of TTD that are unresolved until findings of fact are made by the commission on consideration of the competing evidence. The magistrate concludes that the reasoning in Russell applies to the present facts and that the commission abused its discretion in ordering a retrospective termination of TTD.
The magistrate recommends that the court issue a limited writ returning this matter to the commission to vacate the SHO order and issue a new SHO order, granting or denying claimant's appeal and addressing all material issues presented by the parties, in compliance with Mitchell and Noll. If the SHO determines that TTD must be terminated, the date of termination must be the date of the DHO hearing.
 PATRICIA DAVIDSON MAGISTRATE