DECISION
 IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION {¶ 1} Relator Richard Bristow (hereinafter "relator") filed this original action in mandamus requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio (hereinafter "commission") to vacate its order denying him temporary total disability compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached hereto as Appendix A.) The magistrate concluded relator voluntarily resigned prior to the period he claims to have been temporarily totally disabled. Accordingly, it was the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed an objection to the decision of the magistrate arguing the evidence did not support the magistrate's finding relator received the general employee manual which sets forth the employee call-in procedure. Further, relator maintains no finding was made as to the specific date of relator's termination which is necessary for the proper application of State ex rel. Pretty Products, Inc. v. Indus. Comm.
(1996), 77 Ohio St.3d 5. In response, the commission contends relator makes the same arguments which were previously briefed and discussed by the magistrate. The testimony of Gary Linde establishes relator received the handbook the first day of his employment. Additionally, as relator voluntarily resigned weeks before the period he claims to have been temporarily totally disabled, Pretty Products is not applicable.
 {¶ 4} Following an independent review, pursuant to Civ.R. 53, we find the magistrate properly determined the pertinent facts and applied the salient law to them. Relator's objections to the magistrate's decision are overruled and we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Lazarus and Sadler, JJ., concur.
 IN MANDAMUS {¶ 5} In this original action, relator, Richard Bristow, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning March 8, 2002 on grounds that he voluntarily abandoned his former position of employment, and to enter an order granting him TTD compensation beginning March 8, 2002.
Findings of Fact:
 {¶ 6} 1. On February 1, 2002, relator began his employment with respondent C K Industrial Services, Inc. ("C K"), a state-fund employer. C K records indicate that relator was hired for a position described as "Operator-CDL." Medical records indicate that this position involved cleaning work such as the cleaning of furnaces.
 {¶ 7} 2. Two days later, on February 3, 2002, relator sustained an industrial injury while employed at C K. The industrial claim is allowed for: "contusion of knee, left; abrasion right lower leg," and is assigned claim number 02-314574.
 {¶ 8} 3. Medical records indicate that the injury occurred when relator "stepped off the catwalk and fell." Initially, relator went to Mercy Fairfield where x-rays of both knees and the right leg were done on February 5, 2002. Relator was initially placed on antibiotics.
 {¶ 9} 4. Relator's first office visit with Tasleem A. Minhas, M.D., occurred March 7, 2002. Dr. Minhas's March 7, 2002 office note refers to the February 5, 2002 X-rays and indicates that relator is no longer taking the antibiotics. Upon examination of the left knee, Dr. Minhas reported "slight to moderate effusion in the left knee" and "marked tenderness over the tibial attachment of the medial collateral ligament." Dr. Minhas noted that relator refused aspiration of the left knee.
 {¶ 10} The March 7, 2002 office note further indicates that relator is advised "to stay off the foot as much as possible and take Ibuprofen over-the-counter 3 times a day." Dr. Minhas indicates that relator will be scheduled for an MRI of the left knee.
 {¶ 11} 5. On March 11, 2002, Dr. Minhas completed the first of several C-84s. He initially certified TTD beginning March 7, 2002 through an estimated return-to-work date of March 25, 2002. On subsequent C-84s, Dr. Minhas certified TTD through August 19, 2002.
 {¶ 12} 6. Dr. Minhas's March 11, 2002 C-84 was filed with the Ohio Bureau of Workers' Compensation ("bureau") on March 14, 2002. In an order dated April 11, 2002, the bureau granted TTD beginning March 8, 2002.
 {¶ 13} 7. C K administratively appealed the bureau's April 11, 2002 order. Following a June 25, 2002 hearing, a district hearing officer ("DHO") issued an order affirming the bureau's order. The DHO's order states in part:
 {¶ 14} "* * * The District Hearing Officer rejects the employer's argument that the claimant voluntarily abandoned his employment. The claimant testified at hearing that he has communicated his absences from work in accordance with company policy."
 {¶ 15} 8. C K administratively appealed the June 25, 2002 DHO's order. In support of its appeal, C K submitted the affidavit of Gary Linde, executed August 6, 2002. The Linde affidavit states:
 {¶ 16} "I am the Regional Safety Director for CK Industrial Services, Inc.'s * * * Cincinnati and Terre Haute locations. I have held this position since July 5, 1998.
 {¶ 17} "My job responsibilities include serving as a primary contact for employees with safety concerns, and processing employees from their initial application and interview with the Company through their actual employment.
 {¶ 18} "I also coordinate the orientation process for each new hire.
 {¶ 19} "As part of the orientation process, all new hires are issued a Company handbook, containing the Company's policies, which includes the policy `call-in' procedures.
 {¶ 20} "Richard Bristow received the handbook on his first day of work, February 1, 2002. Mr. Bristow signed an acknowledgment that he received the orientation materials on February 1, 2002. (See Acknowledgement, Attached as Exhibit A)
 {¶ 21} "The Company's call-in procedure states that `absences from work for three (3) consecutive days without notifying your manager will be considered a voluntary resignation.' (See Call-In Procedure, Attached as Exhibit B)
 {¶ 22} "Richard Bristow left work after allegedly suffering an injury on February 3, 2002 and did not return to work after that date.
 {¶ 23} "After Mr. Bristow's industrial injury on Feb. 3rd, 2002 he had no contact with the company until Feb. 5th, when I contacted him when I checked on him to check on his status. The next time Mr. Bristow had contact with the company was Feb. 8th when he came in to pick up his paycheck. At that time Mr. Bristow told me he would be able to work on the Feb. 11th.
 {¶ 24} "Mr. Bristow failed to appear for work as scheduled on Feb. 11th. And failed to contact me or anyone else with the company for at least 3 days.
 {¶ 25} "Because Mr. Bristow failed to notify the Company regarding his absences for more than three consecutive days, his absence was therefore considered a voluntary resignation, in accordance with the Company's clearly stated call-in procedure."
 {¶ 26} 9. Two exhibits are attached to the Linde affidavit. Exhibit A is an acknowledgment signed by relator and Mr. Linde on February 1, 2002, the date of relator's hire. Exhibit A states:
 {¶ 27} "Handouts
 {¶ 28} "Employee Policies Safety Manual Hazard Communication Program
 {¶ 29} "Company Protocol Procedures
 {¶ 30} "Lock out/Tag out Procedures
 {¶ 31} "Confined Space Procedures
 {¶ 32} "I acknowledge receipt of the above listed handout materials."
 {¶ 33} 10. Exhibit B attached to the Linde affidavit is a photocopy of a page from the C K "General Employee Manual." It states in part: "Absence from work for three (3) consecutive days without notifying your manager will be considered a voluntary resignation."
 {¶ 34} 11. Following an August 15, 2002 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO's order. The SHO's order states:
 {¶ 35} "* * * [T]he claimant left work on 2-3-02, after suffering an injury and put his employer on notice that he would return to work on 2-11-02. The claimant did not return to work and did not call-in or submit any off-work slips until 3-8-02. The claimant was terminated from his position of employment based upon his voluntary abandonment of his employment.
 {¶ 36} "Therefore[,] temporary total disability compensation from 3-8-02 to 5-14-02, is denied.
 {¶ 37} "Louisiana Pacific, Company Policy exhibit B., Affidavit of Gary Linde 8-6-02."
 {¶ 38} 12. Relator filed an appeal from the SHO's order of August 15, 2002. In support of his appeal, relator submitted his own affidavit executed September 4, 2002. Relator's affidavit states:
 {¶ 39} "Affiant states that at no time did Affiant fail to produce work excuses for any period of time missed from work.
 {¶ 40} "Affiant further states that claimant submitted several work excuses between the period of time 2/11/02 through 3/8/02.
 {¶ 41} "Affiant further states that at no time did he ever receive notice that he was fired due to a work rule violation or for any other reason.
 {¶ 42} "Affiant further states at no time has he ever received written or oral communication from any representative of CK Industrial Services, Inc. that he had violated any company policy."
 {¶ 43} 13. On September 14, 2002, another SHO mailed an order indicating that the commission refused to hear the appeal.
 {¶ 44} 14. On October 29, 2002, relator, Richard Bristow, filed this mandamus action.
Conclusions of Law:
 {¶ 45} The main issue is whether C K produced evidence that satisfies the third prong of the test set forth in State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, for determining a voluntary abandonment of employment that precludes TTD compensation.
 {¶ 46} Finding that the Linde affidavit and its attached exhibits support the third prong of Louisiana-Pacific's three-part test, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 47} In Louisiana-Pacific, the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:
 {¶ 48} "* * * [W]e find it difficult to characterize as `involuntary' a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft [State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42] and Watts [State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118] — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts." Id. at 403.
 {¶ 49} In State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559, the court held that Louisiana-Pacific requires written termination criteria.
 {¶ 50} It is the third prong of the Louisiana-Pacific test that is at issue here. To satisfy the third prong of Louisiana-Pacific, there must be some evidence upon which the commission relied to show that the employee knew or should have known that a violation of the written work rule could result in termination of employment.
 {¶ 51} Through the affidavit of Gary Linde who averred that relator signed for and received a "Company handbook" on February 1, 2002, his date of hire, C K endeavored to prove that relator knew or should have known about C K's rule prohibiting absence from work for three consecutive days without notifying a manager. According to relator, his acknowledgment of the handouts received on February 1, 2002, fails to show that he received the "Company handbook" containing the work rule regarding absences from work. According to relator, the items listed on the acknowledgement are all "safety handouts" that would not include the company handbook.
 {¶ 52} The magistrate disagrees with relator's view of the evidence. The affidavit clearly states that one of the job responsibilities of safety director Linde is the processing and orientation of newly hired employees, and that all new hires are issued a company handbook. Mr. Linde unequivocally avers that relator signed an acknowledgment that he received the orientation materials on February 1, 2002. That the acknowledgment signed by relator does not list "Company handbook" or "General Employee Manual" does not necessarily show that relator did not receive the company handbook that Mr. Linde avers was received.
 {¶ 53} The Linde affidavit refers to a "Company handbook" and to "the handbook." The affidavit does not purport to state the actual title of the company handbook. It appears to be more likely than not that "Company Protocol Procedures" is the actual title of the handbook that Linde refers to in his affidavit.
 {¶ 54} It is the commission that weighs the evidence. Accepting the credibility of Linde's affidavit and the inference that "Company Protocol Procedures" is the handbook that relator received on February 1, 2002, is well within the commission's fact-finding discretion. That it might be argued to the contrary does not compel this court to overturn the commission's fact finding.
 {¶ 55} Relator seems to suggest that the commission was required to accept his September 4, 2002 affidavit as the actual version of events, i.e., that he "submitted several work excuses between the period of time 2/11/02 through 3/8/02" and "that at no time did affiant fail to produce work excuses for any period of time missed for work."
 {¶ 56} To begin, relator's September 4, 2002 affidavit was not submitted to the SHO at the August 15, 2002 hearing. Relator's affidavit was submitted in support of his appeal to the commission which was refused by order mailed September 14, 2002. In short, the commission did not consider relator's September 4, 2002 affidavit nor was it required to do so. The commission cannot abuse its discretion with respect to evidence that it was never obligated to consider.
 {¶ 57} Moreover, even if relator's averments had been submitted at the August 15, 2002 hearing, the SHO would not have been required to accept those averments as fact.
 {¶ 58} Relator further contends that the commission's failure to set forth the date of relator's termination or resignation prevents meaningful review because under State ex rel. Pretty Products Inc. v.Indus. Comm. (1996), 77 Ohio St.3d 5, relator cannot be held to have voluntarily removed himself from the workforce if he did not have the physical capacity for employment. This contention lacks merit.
 {¶ 59} The relied upon Linde affidavit states that on February 8, 2002, relator picked up his paycheck at C K and at that time told Mr. Linde that he would be able to work on February 11, 2002. According to the affidavit, relator failed to appear for work on February 11, 2002, and he failed to contact Mr. Linde or anyone else at the company for at least three days. Mr. Linde further avers that because relator failed to notify the company regarding his absence for more than three consecutive days, his absence was considered to be a voluntary resignation. The scenario presented by the Linde affidavit clearly shows that relator had violated the work rule and had thus voluntarily resigned prior to the period that he claims to have been temporarily totally disabled. Thus, Pretty Products does not present grounds for vacating the commission's decision.
 {¶ 60} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus
Kenneth W. Macke Magistrate.