DECISION
{¶ 1} Relator, Transco Railway Products, Inc. ("Transco"), has filed this original action in mandamus requesting this court to issue a writ ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding temporary total disability ("TTD") compensation to respondent, Joseph W. Brown, II, and to issue a new order denying TTD compensation or, in the alternative, to issue an order that complies with State ex rel. Mitchell v. Robbins Myers, Inc.
(1983), 6 Ohio St.3d 481, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court grant a limited writ returning this matter to the commission to vacate its order awarding TTD compensation and to issue a new order, granting or denying the requested compensation in compliance with Noll and the other authorities cited in the magistrate's decision. (See Attached Appendix A.) There have been no objections filed to the magistrate's decision.
 {¶ 3} Finding no error or other defect on the face of the magistrate's decision, pursuant to Civ.R. 53(C), we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is granted to the extent that it orders the commission to vacate its order awarding TTD compensation, and orders the commission to enter a new order in a manner consistent with the decision.
Writ of mandamus granted.
Lazarus and Watson, JJ., concur.
 IN MANDAMUS {¶ 4} In this original action in mandamus, relator, Transco Railway Products, Inc. ("Transco"), asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order awarding compensation for temporary total disability ("TTD") to respondent Joseph W. Brown, II, and to issue a new order denying TTD compensation or, in the alternative, to issue an order that complies withState ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 Findings of Fact {¶ 5} 1. On July 16, 2002, Joseph W. Brown, II ("claimant"), sustained an industrial injury when he fell from a ladder. His workers' compensation claim was allowed for a lumbosacral sprain and contusions to the face, buttocks, groin and neck.
 {¶ 6} 2. On July 31, 2002, claimant's treating physician, L. Parekh, M.D., released him to return to limited work, lifting no more than ten pounds at any time and with no kneeling, squatting, climbing of stairs or ladders, repetitive bending or stooping, and no prolonged walking or standing. The release states that, if modified work is not available, the employee is to be off work until his next visit. In addition, the release includes a notation stating that an orthopedic consultation had been scheduled for August 2002.
 {¶ 7} 3. Dr. Parekh also submitted a C-9 request for a myelogram and CT scan.
 {¶ 8} 4. An attendance record maintained by Transco shows that, on Thursday, August 1, 2002, claimant was absent for "Personal Reasons."
 {¶ 9} 5. On Monday, August 5, 2002, claimant was recorded as absent due to "Unknown Cause." On August 6, 2002, claimant was absent for "Personal Reasons." On August 7, 2002, claimant was absent due to "Unknown Cause."
 {¶ 10} 6. On Monday, August 12, 2002, claimant was absent due to "Leave of Absence" and was absent on Tuesday, August 13, 2002, for "Personal Reasons."
 {¶ 11} 7. On August 14, 2002, claimant was listed as absent for "Unknown Cause."
 {¶ 12} 8. The attendance form includes no further notations regarding absences after August 14, 2002, but Transco recorded on other forms that claimant did not report for work on August 15, 2002 or August 16, 2002.
 {¶ 13} 9. On Friday, August 16, 2002, claimant visited the workplace. This notation was made by a company employee:
 {¶ 14} "On 8/16/02 at about 2:45 PM Joe Brown came in to pick up his check. I wanted to know why Joe had not been coming into work and not calling. I told Joe B. that he had a return to work slip for light duty and that he had to come to work or he could be Terminated for not coming in or not calling until a Doctor said he was unable to work and shows Transco a slip saying so.
 {¶ 15} "Joe B. said he did not like working Light Duty because it was boring. I told Joe B. he still had to come to work until a Doctor said otherwise."
 {¶ 16} 10. On Monday, August 19, 2002, Transco completed a disciplinary form stating that claimant was being dismissed due to "Unreported Absence," as follows: "Group II # 46 being absent for (3) consecutive working days without notice to the Company (Group II # 46) employee was absent 8/14/02, 8/15/02, and 8/16/02 without notifying the company resulting in termination of employment." A note on the form states that a copy was sent to claimant via registered mail on August 20, 2002.
 {¶ 17} 11. On August 20, 2002, Transco sent a registered letter to claimant stating that his employment was terminated as of August 19, 2002. Along with this letter the company sent a copy of the disciplinary report and a separation form stating that claimant's employment was terminated due to "Failed to report to work." The narrative explanation on the separation form was as follows: "Absent for (3) consecutive working days without notice to the Company. (Group II #46 Employee Handbook) employee was absent 8/14/02, 8/15/02, 8/16/02 without notifying the Company."
 {¶ 18} 12. The record includes a one-page document consisting of a list of numbered items from 34 to 48. There is no heading or label on the page. At the top of this document, item 34 states: "Stealing, removing, or misappropriating any Company property or property belonging to another employee." Item 46 states: "Being absent for three (3) consecutive working days without notice to the Company." The table of contents for the Amended Stipulated Record includes no title for this document, which is generally included under the heading "Notice of Termination of Employment."
 {¶ 19} 13. On August 22, 2002, claimant's consultation took place with the orthopedic surgeon. Thomas R. Merritt, M.D., found decreased lordosis, bilateral paravertebral spasm, and reduced extension, rotation, and lateral flexion. The lumbar area was sore and tight. Dr. Merritt also noted subjective findings such as constant pain in the right sacroiliac joint radiating into the right buttock and right posterior thigh to about mid thigh. He opined that claimant needed further testing and surgical intervention.
 {¶ 20} 14. Dr. Merritt completed a C-84 certifying TTD beginning August 22, 2002, due to lumbar sprain.
 {¶ 21} 15. In October 2002, a district hearing officer allowed the claim and granted TTD from August 22, 2002 to November 25, 2002, and to continue on medical proof.
 {¶ 22} 16. In November 2002, a staff hearing officer modified the district hearing order to this extent:
 {¶ 23} "The Staff Hearing Officer finds insufficient evidence in that presented to establish that the injured worker knew or should have known prohibited conduct was a dischargeable offense. Therefore, the criteria of Louisiana Pacific [State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401] has not been met.
 {¶ 24} "In addition, the injured worker was on light duty at the time of the discharge and the dispute involved the injured worker's restrictions as a result of the injury and whether the employer could accommodate and adhere to same. Therefore, the termination was not unrelated to the injury herein.
 {¶ 25} "* * *
 {¶ 26} "It is the finding of the Staff Hearing Officer, that the claimant sustained an injury in the course of and arising out of employment described as follows: The injured worker was cutting metal with a cutting torch and a spark landed on his arm. When he shook it off, he lost his balance and fell from a ladder, landing on his feet and falling to his knees. The injured worker testified he felt a shock go up his back when he hit his feet.
 {¶ 27} "It is the order of the Staff Hearing Officer that the claim be allowed for: Lumbar strain, contusion face, buttocks, groin and neck.
 {¶ 28} "This order is based on: the medical evidence of Dr. Parekh 7/16/02 and Dr. Merritt 10/26/02.
 {¶ 29} "* * *
 {¶ 30} "Temporary total disability compensation shall be paid from 8/22/02 through 11/25/02 and to continue upon submission of medical certification of temporary total disability." (Emphasis sic.)
 {¶ 31} 17. In December 2002, the commission refused further appeal on the November 2002 order allowing the claim and awarding TTD compensation.
 {¶ 32} 18. Claimant had further diagnostic studies. By December 4, 2002, Dr. Merritt had recommended surgery, and, in January 2002, the claim was allowed for a herniated disc at L4-5 based on Dr. Merritt's reports and a positive MRI. On March 14, 2003, following affirmance of the additional allowance, claimant underwent surgery consisting of a foraminotomy, discectomy and laminectomy at L4-5.
 Conclusions of Law {¶ 33} In this original action, Transco challenges the award of TTD compensation, arguing that claimant's loss of wages after August 16, 2002, was the result of his own voluntary conduct.
 {¶ 34} It is well established that, when a loss of wages is caused by a worker's voluntary actions rather than the industrial injury, he is not eligible for TTD compensation until such time as he reestablishes his eligibility by returning to wage-earning employment. E.g., State ex rel.Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42 (stating that, where an employee's own actions, for reasons unrelated to the injury, preclude him from returning to his employment, he is not entitled to TTD benefits, since it is the employee's own actions rather than the injury that causes the lack of wages); State ex rel. Baker v. Indus. Comm. (2000),89 Ohio St.3d 376.
 {¶ 35} For example, a worker who voluntarily resigns or retires from his job is ineligible for subsequent TTD compensation. E.g., Stateex rel. Daniels v. Indus. Comm., 99 Ohio St.3d 282, 2003-Ohio-3626. In addition, while incarceration is not normally considered to be a voluntary situation, the courts presume that a person accepts the consequences of his actions, and, therefore, when incarceration removes a person from a wage-earning position, he is not eligible for TTD compensation during the incarceration because his own actions prevented him from being able to earn wages. Ashcraft, supra. Likewise, a discharge from employment may be considered voluntary under certain circumstances, as when the employee was discharged because he violated a known rule.State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118.
 {¶ 36} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the court ruled that a discharge may be treated as a voluntary relinquishment of employment for purposes of disability compensation where the worker has violated a written rule or policy and where the rule/policy (1) clearly defined the prohibited conduct, (2) identified the violation as a dischargeable offense, and (3) was known to the worker or should have been known to him.
 {¶ 37} The voluntariness of losing one's job and wages may be inferred from evidence that the worker knew or should have known of the consequences of engaging in certain acts or omissions, combined with evidence that the worker then voluntarily engaged in those acts or omissions. Ashcraft; Louisiana-Pacific; Baker. However, when an employee's actions were causally related to the industrial injury, the actions were not voluntary. State ex rel. Pretty Products, Inc. v.Indus. Comm. (1996), 77 Ohio St.3d 5; Daniels, supra.
 {¶ 38} In the present action, the commission's entire analysis with respect to the criteria in Louisiana-Pacific was as follows: "The Staff Hearing Officer finds insufficient evidence in that presented to establish that the injured worker knew or should have known prohibited conduct was a dischargeable offense." This finding fails to satisfy the principles in Mitchell and Noll. First, the commission failed to cite any evidence to support its finding or explain why the employer's evidence was insufficient. Further, the commission failed to explain which of theLouisiana-Pacific criteria were not met. The court is hindered in its review because the commission did not state with sufficient clarity which of the criteria in Louisiana-Pacific were not met. In other words, it is not possible to tell whether the commission found that the prohibited conduct was not clearly delineated, whether the consequences were not clearly delineated, or whether the claimant lacked knowledge because the rule was not in writing or was not adequately disseminated, or some combination of factors.
 {¶ 39} The magistrates notes that the commission set forth an additional rationale: "In addition, the injured worker was on light duty at the time of the discharge and the dispute involved the injured worker's restrictions as a result of the injury and whether the employer could accommodate and adhere to same. Therefore, the termination was not unrelated to the injury herein."
 {¶ 40} Again, the commission failed to cite some evidence to support this finding, and it failed to provide an adequate explanation. The explanation is not adequate because, although the commission refers to a "dispute" as to whether Transco offered work to claimant within his injury-caused restrictions, the commission failed to resolve the dispute or make the requisite findings of voluntariness. For example, the commission made no finding as to whether the work offered to claimant was, or was not, within the doctor's restrictions. The commission merely described the dispute without deciding it. The conclusion that "the termination was not unrelated to the injury," is not sufficiently clear with respect to the relevant issue, which was whether the claimant's acts/omissions that allegedly violated the rule were, or were not, causally related to the injury. See Pretty Products, supra.
 {¶ 41} Accordingly, because the commission failed to cite "some evidence" in support of its decision under Louisiana-Pacific, and failed to provide an adequate explanation of its reasoning, a limited writ is warranted. For purposes of the commission's further consideration, the magistrate notes that, where the commission affirmatively relies on an item of evidence in making a finding, the commission is required to identify only the evidence on which it has relied. E.g., State ex rel.Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. However, where the commission's conclusion is not based on its acceptance of or affirmative reliance on a particular item or items of evidence, but is based instead on an assessment that the only evidence presented was insufficient, then the commission is obliged to explain why the evidence was not sufficient. See State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 655 (stating that there must be a reasonable basis for rejecting uncontroverted evidence and that the basis should be in the record); Noll, supra (explaining that a brief explanation of the rationale is necessary to permit meaningful judicial review); State exrel. Stewart v. Columbus Schools (May 30, 2001), Franklin App. No. 01AP-80 (Magistrate's Decision), adopted (Sept. 18, 2001). See, also,State ex rel. Edgerton v. Vencor, Inc. (Apr. 30, 1999), Franklin App. No. 98AP-1366 (Magistrate's Decision), adopted (June 29, 1999); State exrel. Woolever v. The Fishel Co. (Nov. 30, 1998), Franklin App. No. 98AP-643 (Magistrate's Decision), adopted (May 20, 1999).
 {¶ 42} With respect to the requirements of Mitchell and Noll, the magistrate believes that, when the commission concludes that a discharge was not a voluntary departure from employment under Louisiana-Pacific, it must identify at least one specific factor that has not been demonstrated. Then, it must cite the evidence on which it has relied in reaching that conclusion or explain why the evidence submitted by the party with the burden of proof was not sufficient to meet its burden as to that factor.
 {¶ 43} In conclusion, the magistrate recommends a limited writ returning this matter to the commission to vacate its order as to TTD compensation and to issue a new order, granting or denying the requested compensation in compliance with Noll and the other authorities cited herein.
P.A. Davidson, Magistrate.