OPINION
{¶ 1} In this original action, relator, Richard C. Lanterman, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his request for temporary total disability ("TTD") compensation, and to enter an order granting said compensation. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Loc. R. 12(M) of the Tenth District Court of Appeals and Civ. R. 53. The magistrate examined the evidence and issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. Therein, the magistrate concluded that the commission had not denied relator TTD compensation on the ground that he had voluntarily abandoned his employment with Rondinelli Company, Inc., but, rather, because relator had refused an offer of light-duty employment made by Rondinelli, and there was no contemporaneous medical evidence to support relator's assertion that he was physically unable to perform that job. Based upon the fact that TTD compensation is not payable when work within a claimant's physical restriction is made available, the magistrate found that the commission did not abuse its discretion in denying relator's request for TTD compensation and recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision, rearguing the issues presented to and decided by the magistrate. For the reasons adequately stated in the magistrate's decision, we overrule relator's objections.
 {¶ 4} Following independent review, pursuant to Civ. R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we hereby deny the requested writ.
Objections overruled; writ denied.
BRYANT and BROWN, JJ., concur. *Page 3 
 APPENDIX MAGISTRATE'S DECISION {¶ 5} Relator, Richard C. Lanterman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total *Page 4 
disability ("TTD") compensation, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 6} 1. Relator sustained a work-related injury on May 3, 2005 and his claim has been allowed for "sprain of neck; sprain thoracic region; sprain shoulder/arm nos, left shoulder; compression fractures at T11 and L2; lumbar sprain and strain."
 {¶ 7} 2. Relator was unable to return to his former position of employment and began receiving TTD compensation. On October 27, 2005, relator's treating physician, Joseph A. Cerimele, D.O., released relator to return to light-duty work.
 {¶ 8} 3. On October 27, 2005, relator's employer, Rondinelli Co., Inc. ("Rondinelli"), offered relator a light-duty job position as a shoe cleaner/polisher working six hours per day, two to three days per week.
 {¶ 9} 4. Dr. Cerimele reviewed the job duties for the position and found them to be within relator's medical ability.
 {¶ 10} 5. By letter dated November 4, 2005, Rondinelli notified relator that he was expected to return to work on November 8, 2005 in this light-duty position.
 {¶ 11} 6. Relator reported for work on November 8, 2005. Relator informed his supervisor that he was in too much pain to work. Relator did not return to work as scheduled.
 {¶ 12} 7. By letter dated November 9, 2005, Rondinelli again offered relator the light-duty position as a shoe cleaner/polisher and informed relator that he was to report for work on November 15, 2005. If he did not, Rondinelli would consider that relator had voluntarily terminated his employment. *Page 5 
 {¶ 13} 8. Relator did not return to work.
 {¶ 14} 9. Relator did not seek medical treatment until November 21, 2005. Relator was seen by Irene K. Heldman, M.D., who noted the following in an office note:
 * * * He reports that he does still continue to get low back discomfort. It is essentially unchanged over the past month. He had been released to work but reports that partway through the first day he had to leave due to an exacerbation of his back pain. * * *
 * * * As noted overall symptoms are unchanged over the past month since his last appointment. Following his return to work he indicated he had a flare [up] of his back symptoms for several days and then returned to his baseline. * * *
 * * *
 He also had not notified this office or followed up sooner to advise us that he had been of[f] work. He has subsequently been released from that position. We will discuss this further with Dr. Cerimele and have him address it further at followup.
 {¶ 15} 10. The next piece of medical evidence in the record is the December 19, 2005 preliminary report of Dr. Cerimele indicating that relator was last seen in his office December 6, 2005, and setting out the treatment rendered from May 31 through September 29, 2005. The report also listed dates of disability from May 31 through October 27, 2005, the actual date relator was released to light-duty employment.
 {¶ 16} 11. The next medical evidence in the file is a January 26, 2006 report of Dr. Cerimele summarizing relator's case:
 Richard Lanterman was first introduced to me by way of consultation on 5/31/05 in referral from his primary caregiver[.] * * * Rich came into see me with lumbar and midthoracic muscular pain that had been present since a motor vehicle accident earlier in the month. *Page 6 
 He had no neurologic complaints in the upper extremities or lower extremities. No muscular complaints in the upper or lower extremities. These complaints were limited to the soft tissue muscles and soft tissue of the thoracolumbar spine.
 * * *
 Richard's physical examination was normal from the muscular and neurologic standpoint, both in the upper and lower extremities. The palpatory examination demonstrated some tightness and initially he had significant restriction in his lumbar flexibility. His x-rays also demonstrated some compression fractures in the lower thoracic level initially at T10. * * *
 * * *
 Richard made very good progress. I saw him a number of times in the late summer and autumn of 2005. In late summer of 2005 he was sent into a rehab program and gained all of his range of motion back within a relatively short amount of time.
 He did go through an active therapy program and made improvements. By October he demonstrated almost completely normal range of motion. He was discharged at that time and returned to his activities.
 He followed up again with my associate, Dr. Heldman, in November while I was on a medical leave of absence and Rich stated to her that he had increased pain with returning back to work. He reported that he had pain on his first day and had not been back to work since. That was first reported to us on 11/21/05 and we have no information that he had problems.
 He followed up with me in 12/2005 still with good range of motion but continued pain. Rich is very well aware that these compression fractures may continue to be painful for up to a year. * * * I sent him * * * for evaluation for pain management. At this time Rich's case is still not complete and he is still in the process of gaining pain control. * * *
 {¶ 17} 12. Relator was seen again by Dr. Cerimele on June 28, 2006, and the office note from that date provides, in pertinent part: *Page 7 
 Richard is still having some complaints in the low back pain. He is doing better and making some improvements.
 * * * MRIS do show that he has an L5-S1 herniation[.] * * * He also has thoracic herniations at the T5-6, T6-7 and T7-8 levels but no neuroforaminal or canal stenosis. * * *
 This is still being treated as a compression fracture. He made some improvement with epidurals. He is now in the active rehab program.
 * * * Neuromuscular is intact. Sciatic stretch sign is negative. Patrick's FABERE[1] is negative. He still has more lumbar stabilization activities to do. Poor thoracolumbar posture and stabilization at this time. He need to continue with the rehab program; he is just getting started.
 * * * From a review, he first notified Dr. Heldman, who was covering for me in November. He had to go home from his light-duty program and had not been back. So from that standpoint on, from 11/21/05 on, we are covering him for total disability from work because he did attempt to return under a light-duty program and could not manage. In that time frame he was fired; between the time of returning back to work and until he made this known to us through his examination with Dr. Heldman, who was covering for me. Therefore, I am continuing his off duty until total temporary from 11/21/05 when we first became aware of this through present.
 This will continue until the rehab program is far enough through to where he can do limited-duty activities. I will see him again in 2 weeks since he is actively rehabilitating now.
 {¶ 18} 13. Relator applied for TTD compensation on July 13, 2006. In support, relator provided the June 29, 2006 C-84 signed by Dr. Cerimele certifying a period of TTD compensation from November 21, 2005 through an estimated return-to-work date of *Page 8 
September 4, 2006. Dr. Cerimele did not note any objective or subjective clinical findings as the basis for his certification.
 {¶ 19} 14. Relator's motion was heard before a district hearing officer ("DHO") on August 31, 2006 and was granted. The DHO awarded TTD compensation from November 21, 2005 through August 31, 2006 and continuing based upon Dr. Cerimele's June 29, 2006 C-84 report, office notes, and relator's testimony.
 {¶ 20} 15. Rondinelli appealed and the matter was heard before a staff hearing officer ("SHO") on October 18, 2006. The SHO vacated the prior DHO's order and denied TTD compensation in its entirety as follows:
 It is the finding of the Staff Hearing Officer that Temporary Total Compensation from 11/21/2005 to date is specifically denied for the reason that the Injured Worker's attending physician, Dr. Cerimele, released the Injured Worker for light duty on 11/08/2005 and that the Employer had available and made a job offer of light duty as a shoe shiner that was clearly within the Injured Worker's physical restrictions per the attending physician. The Staff Hearing Officer further finds and orders that the Injured Worker herein refused to work said job after working the light duty job for approximately one day and failing to return to work indicating by phone that he could not perform the light duty position as a shoe shiner which resulted in his termination three days later.
 The Staff Hearing Officer finds based upon the refusal of working the said light duty offer, the Injured Worker is thus no longer eligible for Temporary Total Compensation benefits herein.
 This order is based upon a review of the office notes, C-30 releasing the Injured Worker dated 10/27/2006 from Dr. Cerimele (Injured Worker's attending physician), as well as, various letters on file from the above stated Employer offering the Injured Worker a light duty position. *Page 9 
 {¶ 21} 16. Relator's appeal was refused by order of the commission mailed November 16, 2006.
 {¶ 22} 17. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 24} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached *Page 10 
maximum medical improvement. See R.C. 4123.56(A); State ex rel. Ramirezv. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 25} Relator contends that the commission abused its discretion by denying him TTD compensation on the basis that he voluntarily abandoned his employment with Rondinelli. Relator cites State ex rel. PrettyProducts, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5; State ex rel.Reitter Stucco, Inc. v. Indus. Comm., 117 Ohio St.3d 71, 2008-Ohio-499; and State ex rel. OmniSource Corp. v. Indus. Comm., 113 Ohio St.3d 303,2007-Ohio-1951, in support of his argument. In these cases, the claimants were terminated from their employment at a time when they were unable to return to their former position of employment. The Supreme Court of Ohio has consistently held that a claimant whose departure is deemed voluntary does not surrender eligibility for TTD compensation if, at the time of departure, the claimant is still temporarily and totally disabled. For the reasons that follow, the magistrate finds that relator's argument does not entitle him to a writ of mandamus.
 {¶ 26} Relator has mischaracterized the commission's order. The commission did not deny relator TTD compensation on the ground that he had abandoned his employment; instead, the commission found that Rondinelli made an offer of light-duty employment within relator's medical restrictions available to him and, after one day at that job, relator left, did not return, and did not provide contemporaneous medical evidence. It is undisputed that TTD compensation is not payable when work within the physical capabilities of the claimant is made by the employer or another employer. Relator contends that the job Rondinelli offered him was not actually within his physical capabilities as evidenced by his statements that his pain exacerbated while on the job *Page 11 
and he was unable to continue. The problem with relator's argument is there is no contemporaneous medical evidence supporting his contention that he was not able to perform the light-duty job Rondinelli made available to him. Relator reported to the light-duty job on November 8, 2005, and did not seek medical treatment until November 21, 2005. In the office note from that date, the following is noted upon physical examination:
 PHYSICAL EXMAINATION: No specific point tenderness. In palpation of the spine of the low back he does reports [sic] diffuse mild tenderness to palpation over his low back and paraspinal muscles of the lumbar / low thoracic area. Negative straight-leg raise. Negative seated straight-leg raise. Lower extremity strength is 5/5 throughout. Reflexes are intact. He reports his sensation is intact.
 {¶ 27} In fact, none of the medical evidence in the record following the day relator returned to light-duty employment contains any physical findings to support relator's contention that he was not able to perform the job. Specifically, there are no physical objective findings in Dr. Cerimele's December 19, 2005 preliminary report, nor in his January 26, 2006 report, nor in his June 8, 2006 office note, nor in the June 29, 2006 C-84. Further, in his June 8, 2006 office note, Dr. Cerimele notes that recent MRIs show L5-S1 herniation as well as T5-6, T6-7, and T7-8 thoracic herniations. These conditions are not allowed in relator's claim. There simply is no objective medical evidence supporting relator's contention that he was not able to perform the light-duty work offered to him by Rondinelli.
 {¶ 28} In summary, the magistrate finds that relator was not denied TTD compensation on the ground that he had voluntarily abandoned his employment with Rondinelli. Instead, the commission determined that he was not entitled to TTD compensation because he refused an offer of light-duty employment made by Rondinelli *Page 12 
in the absence of any medical evidence supporting his assertion that he was physically unable to perform that job. Because TTD compensation is not payable when work within a claimant's physical restriction is made available, the magistrate finds that the commission did not abuse its discretion in denying relator's request for TTD compensation and this court should deny relator's request for a writ of mandamus.
[1] Patrick's test: "A test for arthritis of the hip. The thigh and knee of the supine patient are flexed, and the external malleolus of the ankle is placed over the patella of the opposite leg. The test result is positive if depression of the knee produces pain. This test is also called the fabere test. `FABERE' is a mnemonic for the position the hip assumes during this test." Taber's Cyclopedic Medical Dictionary (20 Ed. 2005) 1608. *Page 1