DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Emily Feick, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order denying her temporary total disability ("TTD") compensation beginning December 12, 2002, on grounds that she voluntarily abandoned her employment with respondent-employer, Wesley Community Services ("WCS"), and to enter a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, recommending that this court grant relator's requested writ of mandamus. (Attached as Appendix A.)
 {¶ 3} The commission has filed objections to the magistrate's decision, arguing in part that the magistrate's finding that negligent acts cannot be grounds to find that a claimant voluntarily abandoned a position of employment is improperly overbroad. The commission asserts that, for purposes of workers' compensation laws, while there are scenarios where a claimant should not be held accountable for a negligent act, there are also scenarios where it is permissible to hold a claimant accountable for his or her negligence and/or careless acts.
 {¶ 4} The commission argues, and we agree, that voluntary abandonment cases decided under the principles of State ex rel. Louisiana Pacific v.Indus. Comm. (1995), 72 Ohio St.3d 401, are fact driven and are determined on a case-by-case basis. Under the facts of that case, claimant's employer terminated him after three unexcused absences, in violation of a written company policy. The court found it "difficult to characterize as `involuntary' a termination generated by the claimant's violation of a written work policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." Id. at 403. The court further held that, defining such an employment separation as voluntary comports with principles in prior decisions that "an employee must be presumed to intend the consequences of his or her voluntary acts." Id.
 {¶ 5} In the present case, respondent-employer had a company policy providing for discharge of an employee following a third violation of a "Class I" offense, which included offenses defined as "[c]arelessness, negligence or irresponsibility." As noted by the magistrate, on two prior occasions, claimant had negligently backed a van into another vehicle, and negligently placed the wrong key in the ignition of a van, causing damage to the van. Claimant's third incident, ultimately giving rise to her discharge, involved entering an intersection against a red traffic light.
 {¶ 6} The magistrate found no evidence in the record that the claimant's act of running a red light was willful, and neither do we. We decline, however, to adopt a per se rule that no form of negligent conduct leading to an employee's discharge could ever constitute a voluntary abandonment of employment. Rather, as suggested by the commission, there may be situations in which the nature or degree of the conduct, though not characterized as willful (e.g., repeated acts of neglect or carelessness by an employee), may rise to such a level of indifference or disregard for the employer's workplace rules/policies to support a finding of voluntary abandonment. We do not find, however, that the facts of this case involve either willful or other conduct constituting voluntary abandonment.
 {¶ 7} Based upon the foregoing, we adopt the magistrate's findings of fact, but we modify the magistrate's conclusions of law and sustain the commission's objections to the limited extent provided; the commission's objections are otherwise overruled. In accordance with the magistrate's decision, we grant a writ of mandamus ordering the commission to vacate its order of August 8, 2003, finding a voluntary abandonment of employment, and to enter a new order that adjudicates relator's motion for TTD compensation.
Objections sustained in part; overruled in part; writ granted.
Klatt and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Emily Feick, :
 Relator, :
v. : No. 04AP-166
Wesley Community Services and : (REGULAR CALENDAR)
The Industrial Commission of Ohio,
 :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on September 16, 2004 Clements, Mahin Cohen, LPA, Co., and William E. Clements, for relator.
Graydon, Head Ritchey, LLP, Amy Lippert and Daniel E. Burke, for respondent Wesley Community Services.
Jim Petro, Attorney General, and Joseph C. Mastrangelo, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 8} In this original action, relator, Emily Feick, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation beginning December 12, 2002, on grounds that she voluntarily abandoned her employment with respondent Wesley Community Services ("WCS") and to enter an order granting said compensation.
Findings of Fact:
 {¶ 9} 1. At approximately 10:00 a.m. on December 12, 2002, while driving a transport vehicle in the scope of her employment with WCS, relator sustained an industrial injury as she entered an intersection and collided with another vehicle. According to the traffic crash report completed by an officer of the Cincinnati Police Department, relator entered the intersection against a red traffic light. A traffic citation was issued to relator by the police officer.
 {¶ 10} 2. On December 12, 2002, following the vehicle accident, relator presented to a hospital emergency department for treatment. The emergency room physician noted in his report that relator had returned to work at WCS after the collision, but was later transported to the emergency room after her co-workers observed her behavior at work. According to the emergency room report, relator had no recollection of the accident and "was rather upset." The emergency room physician wrote his impression and diagnosis as "closed head injury." Relator was discharged from the emergency room on December 12, 2002, after undergoing medical testing.
 {¶ 11} 3. On December 13, 2002, a WCS manager completed a WCS form captioned "Notice/Record of Disciplinary Action." On the form, WCS indicated that relator was being terminated from her employment "[b]ecause of the seriousness of this violation." WCS also noted that relator had "[d]isregarded a stop light * * * resulting in a crash," which allegedly constituted a violation of the company handbook. On the form, the WCS manager specified that the violation was "Class I #10, Page 10 in handbook."
 {¶ 12} 4. The WCS handbook indicates that an employee can be discharged for a third violation of a Class I offense committed within a 12-month period. The handbook enumerates the Class I offenses. Offense number 10 is described as follows: "Carelessness, negligence or irresponsibility involving participant care or any Wesley Community Services procedure, operation or property."
 {¶ 13} 5. By letter dated December 16, 2002, WCS notified relator of her discharge:
* * * [B]ased on the traffic accident of December 12, 2002 and the other accumulated incidents over the past year, your employment with Wesley Community Services is terminated effective December 16, 2002.
 {¶ 14} 6. Records from WCS document two other offenses that occurred prior to the December 12, 2002 collision. On June 8, 2002, relator received a verbal warning for her first offense when she negligently backed a WCS van into another vehicle at the WCS parking lot. On July 24, 2002, relator received a written warning for a second offense after she negligently placed the wrong key in the ignition of a WCS van that resulted in "$300 damage and loss of vehicle #4 for 3 days." The written warning for the second offense identified the offense as "Class I #10." The written warning informed relator that "further violation of any company rule will result in termination."
 {¶ 15} 7. On January 2, 2003, relator completed a "First Report of Injury, Occupational Disease" ("FROI-1") to initiate her industrial claim. WCS refused to certify the claim.
 {¶ 16} 8. Following a February 24, 2003 hearing, a district hearing officer ("DHO") allowed the claim for "closed head injury." Apparently, WCS did not administratively appeal the claim allowance.
 {¶ 17} 9. On March 24, 2003, relator's treating physician, Margaret R. Atterbury, M.D., certified a period of temporary total disability beginning December 12, 2002. Dr. Atterbury also indicated that the injury had reached maximum medical improvement ("MMI") as of March 24, 2003.
 {¶ 18} 10. On April 3, 2003, relator moved for TTD compensation based upon Dr. Atterbury's certification.
 {¶ 19} 11. Following a June 6, 2003 hearing, a DHO awarded TTD compensation from December 13, 2002 to March 24, 2003, based upon relator's testimony and the report and records from Dr. Atterbury. WCS administratively appealed.
 {¶ 20} 12. WCS's administrative appeal was heard by a staff hearing officer ("SHO") on August 8, 2003. At the hearing, WCS claimed that relator was not entitled to TTD compensation because she had voluntarily abandoned her employment at WCS. Following the August 8, 2003 hearing, the SHO issued an order vacating the DHO's order. The SHO's order states:
The Staff Hearing Officer denies the C-86 Motion filed 04/03/2003.
The Staff Hearing Officer denies the injured worker's request for temporary total disability compensation from 12/13/2002 and [sic] 03/24/2003. The Staff Hearing Officer finds that the injured worker's employment with Wesley Community Services was terminated on 12/16/2002. The Staff Hearing Officer finds that the injured worker violated written work rules that she was aware by receipt of the company handbook.
The Staff Hearing Officer finds that [the] injured worker received written disciplinary action reports which notified her that a third offense could result in immediate discharge. The Staff Hearing Officer find[s] that it was [the] injured worker's voluntary actions, albeit negligent and/or careless, acts, that resulted in her 3 offenses and her termination. The Staff Hearing Officer finds [the] injured worker's actions led to her termination from employment.
Thus, the injured worker's firing is deemed a voluntary departure.
Therefore[,] the Staff Hearing Officer finds that the injured worker is not entitled to temporary total disability compensation.
This order is based on Louisiana Pacific Case [State ex rel.Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401] and disciplinary action reports on file.
 {¶ 21} 13. On November 13, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 8, 2003.
 {¶ 22} 14. On February 19, 2004, relator, Emily Feick, filed this mandamus action.
Conclusions of Law:
 {¶ 23} The issue is whether an injured worker, fired by her employer for her negligent acts, can be held to have voluntarily abandoned her employment.
 {¶ 24} Finding that an injured worker, fired by her employer for her negligent acts, cannot be held to have voluntarily abandoned her employment, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 25} Explaining that a firing can constitute a voluntary abandonment of employment, the court, in State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401, 403, states:
In State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42,517 N.E.2d 533, we discussed the temporary total disability compensation eligibility of an incarcerated claimant. We acknowledged that imprisonment would not fit the traditional definition of "voluntary" since individuals, as a general rule, do not actively seek or consent to incarceration. Looking more deeply, however, we found:
"While the prisoner's incarceration would not normally be considered a `voluntary' act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act." Id., 34 Ohio St.3d at 44, 517 N.E.2d at 535.
Recognizing the parallels underlying incarceration and firing, we observed in State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204:
"We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *"
Examining the present facts, we find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. Defining such an employment separation as voluntary comports with Ashcraft and Watts — i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.
 {¶ 26} Significantly, neither Louisiana-Pacific nor its progeny state that any firing constitutes a voluntary abandonment of employment. SeeState ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 28-35,2002-Ohio-5305 (tracing the history and theoretical underpinnings of the voluntary abandonment rule). While an employer is free to determine and define its own work rules and the consequences of their violation, the commission and ultimately the courts have the duty to determine whether any specific firing meets the criteria set forth under Louisiana-Pacific
and its progeny. See State ex rel. McKnabb v. Indus. Comm. (2001),92 Ohio St.3d 559 (the court determined that the firing did not constitute a voluntary abandonment because the injured worker was not discharged for a violation of a written work rule).
 {¶ 27} The Louisiana-Pacific court's reliance upon State ex rel.Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, and State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118, to underpin its holding that a firing can constitute a voluntary abandonment was a critical component of its rationale. As relator here correctly points out, the injured worker must have willingly undertaken the misconduct for which she was fired in order for the misconduct to take on a voluntary character. Willful misconduct is, be definition, something more than negligence. Brockman v. Bell (1992), 78 Ohio App.3d 508, 515, citing Tighe v. Diamond (1948), 149 Ohio St. 520.
 {¶ 28} In this action, the commission mischaracterizes the misconduct for which relator was fired by asserting that relator "recklessly operated a company vehicle on three separate occasions within a six month period." (Commission's brief at 1.) The commission's assertion here conflicts with its administrative finding that describes relator's actions as "negligent and/or careless." Moreover, there is no evidence in the record to support the commission's assertion that relator's conduct on any of the three occasions was anything but simple negligence. Accordingly, for purposes of this action, this magistrate must conclude that relator was fired by WCS for negligent conduct. In fact, the portion of the company handbook cited by WCS defines the misconduct as "carelessness, negligence, or irresponsibility involving * * * any Wesley Community Services procedure, operation or property." There is no evidence in the record that WCS ever accused relator of reckless conduct.
 {¶ 29} The commission here also asserts that "[i]t is important to note that Feick voluntarily ran a red traffic light." (Commission's brief at 6.)
 {¶ 30} To the extent that the commission's assertion suggests that relator willfully, rather than negligently, violated a traffic rule causing the accident, there is, again, no evidence in the record to support the suggestion of willful misconduct.
 {¶ 31} Clearly, relator's negligent conduct for which she was progressively disciplined and ultimately discharged cannot constitute a voluntary abandonment of her employment under Louisiana-Pacific.
 {¶ 32} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of August 8, 2003, finding a voluntary abandonment of employment, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates relator's motion for TTD compensation.