{¶ 14} Because I am unable to agree with the majority's conclusion that the commission abused its discretion in determining that relator's termination from his employment constitutes a voluntary abandonment so as to preclude an award of disability compensation, I respectfully dissent.
 {¶ 15} As indicated in the magistrate's decision, it is well established that post-injury firings must be carefully scrutinized, and it is necessary to carefully examine the totality of the circumstances to determine whether a discharge was causally related to the injury and whether or not the rule violation was a mere pretext to terminate the employee to avoid payment of disability benefits. Here, the commission did as required and *Page 5 
concluded that relator's termination was not because of the fact that he caused injury, but rather was due to his reckless conduct, i.e., five motor vehicle accidents in a period of less than three years while hauling hazardous cargo. As recognized by this court in Feick, supra, "there may be situations in which the nature or degree of the conduct, though not characterized as willful (e.g., repeated acts of neglect or carelessness by an employee), may rise to such a level of indifference or disregard for the employer's workplace rules/policies to support a finding of voluntary abandonment." Id. at ¶ 6. The commission, within its discretion, found that relator's conduct did constitute such an indifference and/or disregard of the employer's policies to support a finding of voluntary abandonment.
 {¶ 16} While I would agree with the majority's statement that "an accident does not equate to an intentional violation of a work rule so as to constitute voluntary abandonment" here the SHO specifically found that relator's termination was "due to his reckless conduct which caused a fifth (5th) motor vehicle accident in a period of approximately two years, while hauling hazardous cargo." In other words, there was not a single accident but a finding by the SHO that relator's conduct rose to such a level of indifference or disregard for the employer's workplace rule/policies to support a finding of voluntary abandonment. Relator acknowledged to his supervisor that "I tore it up good this time" and inquired as to whether or not he was going to be fired. Moreover, the record does not indicate that these accidents werenot relator's fault, and the uncontested findings of the SHO were that relator was at fault in each of the accidents.
 {¶ 17} We are not to substitute our judgment for that of the commission, but instead are to review the record to determine whether there is "some evidence" to support *Page 6 
the commission's determination. Because the record does indeed contain "some evidence," in the form of uncontested findings to support the commission's determination, I am unable to conclude that the commission abused its discretion, and find that mandamus is not appropriate. Consequently, I would overrule relator's objections to the magistrate's decision, adopt the magistrate's decision in toto, and deny the requested writ of mandamus. *Page 7 
 APPENDIX A MAGISTRATE'S DECISION Rendered on November 15, 2006 IN MANDAMUS {¶ 18} Relator, Robert Upton, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total *Page 8 
disability ("TTD") compensation on the grounds that relator had voluntarily abandoned his employment with Crown Battery ("employer"), and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 19} 1. Relator was hired by the employer in October 1999. At that time, relator was provided a handbook which he acknowledged that he received. Relator was employed as a truck driver.
 {¶ 20} 2. On September 26, 2005, relator was involved in an accident. The truck relator was driving left the highway and struck a guardrail. The truck and cargo were damaged in the accident. Relator was hauling several large batteries which shifted during the accident causing them to overturn and spill. Hazardous materials were released onto the roadway.
 {¶ 21} 3. Prior to this accident, relator had been involved in four other accidents while driving for the employer.
 {¶ 22} 4. In a letter dated September 30, 2005, the employer terminated relator's employment for violating work rule number 27, involving the violation of any safety rules. That letter specifically provides as follows:
 * * * Violation work rule #27, Safety — Termination On September 26, while driving Crown's vehicle, you hit a guardrail causing significant damage to the truck and an acid spill. Additionally, the product you were carrying was destroyed.
 Bob, you have had 5 vehicle related mishaps or accidents in less than 3 years. This is an unacceptable safety record and performance; therefore, you are being terminated from *Page 9 
Crown Battery. Per Crown policy, you may submit a written appeal of this action within 3 days.
 {¶ 23} 5. The relevant work rules provide as follows:
 It is in the best interest of all to maintain high standards of conduct, to protect the safety and general health of all, and to maintain the general effectiveness of plant operations. The following plant rules are established for these [illegible]. This list is intended only as a guideline. Other acts of questionable conduct will be judged accordingly and may be subject to disciplinary action, including termination.
 * * *
 Violation of any safety rules[.]
 * * *
 The foregoing examples of causes for disciplinary action do not in any way limit the Company's right to discipline an employee for just cause.
 Disciplinary action will occur when plant rules have been violated by employees and shall be based upon the severity of the offense and the employee's total job performance. * * *
 Such action will generally occur as follows:
First Step — Verbal Warning Second Step — 1st Written Warning Third Step — 2nd Written Warning Fourth Step — Termination.
 A more serious violation of plant rules may result in bypassing one or more steps
 Once the second step has been reached in any of the above work rules, the disciplinary process becomes cumulative, i.e. the next incident of any violation of a work rule will require the next step in the disciplinary process[.] (Exception: violation of a serious nature, which deems immediate termination.) *Page 10 
 {¶ 24} 6. Relator filed an FROI form alleging that he sustained certain injuries as a result of the accident. Relator also submitted a C-84 form completed by his doctor David T. DeFrance, M.D., who certified relator as being totally disabled from September 26 through November 13, 2005.
 {¶ 25} 7. Relator's motions were heard before the Ohio Bureau of Workers' Compensation ("BWC") and, in an order mailed October 17, 2005, relator's claim was allowed for the following conditions: "Sprain of neck[;] Contusion of knee Right," and TTD compensation was ordered paid beginning September 27, 2005.
 {¶ 26} 8. The employer appealed and the matter was heard before a district hearing officer ("DHO") on November 23, 2005. The DHO affirmed the prior BWC order in all respects.
 {¶ 27} 9. Upon further appeal by the employer, the matter was heard before a staff hearing officer ("SHO") on January 6, 2006. At that time, the SHO determined that additional conditions should be allowed in relator's claim. As such, the SHO concluded that relator's claim should be allowed for the following conditions: "cervical strain (847.0), and a contusion, with ecchymosis to a mild degree, above the right knee (924.11)." However, with regard to the payment of TTD compensation, the SHO concluded that no TTD compensation should be awarded because relator had voluntarily abandoned his employment with the employer when he violated written work rule number 27 and had sustained his fifth motor vehicle accident in a period of approximately two years. The SHO reviewed two cases from this court: State ex rel. Nifco, LLC v.Woods, Franklin App. No. 02AP-1095, 2003-Ohio-6468, and State exrel. *Page 11 Feick v. Wesley Community Servs., Franklin App. No. 04AP-166,2005-Ohio-3986. In citing the Nifco case, the SHO noted that this court had made the following point:
 * * * [I]t is imperative to carefully exam[ine] the totality of the circumstances to determine whether a discharge was causally related to the injury and whether or not the rule violation was a mere pretext to terminate the employee, to avoid the payment of Temporary Total Disability Compensation. * * *
(Emphasis sic.) In citing the Feick case, the SHO emphasized the following from this court's decision:
 * * * The Court held that repeated acts of neglect or carelessness by an employee may rise to such a level of indifference or disregard for the employer's workplace rules/policies to support a finding of "voluntary abandonment." * * *
The SHO concluded as follows:
 Therefore, it is the finding of this Staff Hearing Officer that the injured worker's termination was not because of the fact that he had caused the injury itself, as in the NIFCO v. Woods case, but rather due to his reckless conduct which caused a fifth (5th) motor vehicle accident in a period of approximately two years, while hauling hazardous cargo. Therefore, it is the finding of this Staff Hearing Officer that the injured worker's termination was due to his violation of a written work rule, which clearly defined the prohibited conduct, was previously identified by the employer as a dischargeable offense, and the worker knew of the rule and the consequences of violating the rule. In fact, at the time that his supervisor picked him up, at the scene of the motor vehicle accident, he stated that "I tore it up good this time" and he specifically asked whether or not he was going to be terminated. Therefore, it is the finding of this Staff Hearing Officer that the injured worker is deemed to have accepted the consequences of being without wages, for a period of time, due to his wanton disregard for the employer's workplace rules and policies, which led to his termination, so as to constitute a bar to the payment of compensation, *Page 12 
pursuant to the [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401] holding.
(Emphasis sic.)
 {¶ 28} 10. Relator appealed and, by order mailed February 3, 2006, the commission refused his appeal.
 {¶ 29} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 30} For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus as more fully explained below.
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 32} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell *Page 13 Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. In State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118, 121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
 {¶ 33} Therefore, where a claimant has voluntarily relinquished employment, either by resisting or abandoning employment under State exrel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. See, for example, State ex rel. McKnabb v. Indus.Comm. (2001), 92 Ohio St.3d 559. However, in State ex rel. PrettyProducts, Inc. v. Indus. Comm. (1996), 77 Ohio St.3d 5, the Supreme Court of Ohio distinguished Louisiana-Pacific, determining that where the employee's conduct is causally related to the industrial injury, the termination of employment is not voluntary.
 {¶ 34} Both the Supreme Court of Ohio and this court have reiterated that post-injury firings must be carefully scrutinized. In State ex rel.Smith v. Superior's Brand Meats, Inc. (1996), 76 Ohio St.3d 408, 411, the court recognized "the great potential for abuse in allowing a simple allegation of misconduct to preclude temporary total disability compensation." Further, the court has noted that the nature of departure has remained the pivotal question. Id.; Rockwell.
 {¶ 35} In the present case, the commission examined the totality of the circumstances surrounding relator's discharge and the commission determined that his discharge was due to his violation of the employer's written work rule and that it was not *Page 14 
related to the fact that relator had sustained an injury. As such, the question to be determined is whether there is "some evidence" to support the commission's determination. In the present case, as the SHO noted, this was relator's fifth motor vehicle accident within a two-year period. At the time of this accident, relator was hauling hazardous cargo. Because there is some evidence in the record to support the commission's determination, mandamus is not appropriate.
 {¶ 36} Relator also asserts that his termination was improper because the employer did not follow the gradual disciplinary steps. However, as the handbook makes clear, "[a] more serious violation of plant rules may result in bypassing one or more steps."
 {¶ 37} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion when, after examining the totality of the circumstances surrounding relator's termination, the commission determined that his termination from employment was due to his violation of the employer's written work rule and was not due to his injury. As such, the commission's determination that relator is not entitled to TTD compensation because he voluntarily abandoned his employment with the employer does not constitute an abuse of discretion and relator's request for a writ of mandamus should be denied. *Page 1