[Cite as *State ex rel. Washington v. Indus. Comm.*, 2015-Ohio-3897.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.
Elizabeth A. Washington,      :

                              :

      Relator,               :

                              :

v.                                                No. 14AP-445

                              :

Industrial Commission of Ohio and                (REGULAR CALENDAR)
Montgomery County,            :

                              :

      Respondents.           :

---

## D E C I S I O N

Rendered on September 24, 2015

---

*E.S. Gallon & Associates,* and *Corey L. Kleinhenz*, for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Mathias H. Heck, Jr.,* Prosecuting Attorney, *Todd M. Ahearn* and *Jonathan A. Ketter,* for respondent Montgomery County.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Elizabeth A. Washington, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent total disability ("PTD") compensation, which was based on a finding that she voluntarily abandoned the workforce, and to enter an order that adjudicates her PTD application on its merits.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found: (1) a medical inability to return to her former position of employment at respondent, Montgomery County ("employer"), precluded a commission finding that relator voluntarily abandoned her employment based on the principle set forth in *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996); (2) the staff hearing officer's order does not comply with Ohio Adm.Code 4121-3-34(D)(1)(d); and (3) the commission abused its discretion in determining that relator voluntarily abandoned the workforce subsequent to her retirement. Therefore, the magistrate has recommended that we grant relator's request for a writ of mandamus.

{¶ 3} Both the commission and the employer have filed objections to the magistrate's decision. The basis for their objections is very similar. Because all of the objections are closely related, we will address them together.

{¶ 4} Respondents' principal argument is that the magistrate erred by substituting his judgment for that of the commission in determining whether relator's retirement was a voluntary abandonment of the workforce for reasons unrelated to her industrial injury. We agree.

{¶ 5} If an injured worker voluntarily abandons the entire workforce, the injured worker is not eligible for PTD compensation. *State ex rel. Cinergy Corp./Duke Energy v. Heber*, 130 Ohio St.3d 194, 2011-Ohio-5027, ¶ 5; *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202 (1994), paragraph two of the syllabus. However, if the abandonment of the workforce is caused by the industrial injury, the claimant can receive PTD compensation. *State ex rel. Hart v. Indus. Comm.*, 10th Dist. No. 12AP-77, 2013-Ohio-1155. The voluntary nature of abandonment of the workforce is a factual question within the commission's final jurisdiction. *State ex rel. Krogman v. B & B Ents. Napco Flooring, LLC*, 10th Dist. No. 14AP-477, 2015-Ohio-1512.

{¶ 6} Here, the commission carefully considered the evidence in determining that relator's retirement constituted a voluntary abandonment of the workforce and was not caused by her industrial injury. There is substantial evidence to support the commission's determination.

{¶ 7}   It is undisputed that at the time she decided to retire, relator had been released to work with temporary restrictions by Dr. Lehner.  (Medco-14 form, Mar. 26, 2012.)   Relator withdrew from her rehabilitation program because she was retiring. Relator admitted that she did not receive any medical advice that she should retire from the workforce due to her industrial injury.  Dr. Lehner's Medco-14 form is medical evidence, contemporaneous with relator's retirement, that indicates she was capable of sustained remunerative employment at the time of her retirement.  Relator made no subsequent attempt to reenter the workforce.  The commission questioned relator during the hearing and assessed her motivation for retiring in light of the medical evidence. Therefore, there is some evidence supporting the commission's decision that relator's retirement constituted the voluntary abandonment of the workforce and was not caused by her industrial injury.

{¶ 8}   The fact that relator was receiving wage continuation at the time of her retirement does not require a different result.  Receipt of wage continuation or temporary total disability ("TTD") compensation does not preclude a finding that a claimant has voluntarily abandoned the workforce for reasons unrelated to his or her injury.  Moreover, voluntarily abandoning the workforce precludes PTD compensation even if the departure from the position of employment is injury induced.  *State ex rel. Corman v. Allied Holdings, Inc.*, 132 Ohio St.3d 202, 2012-Ohio-2579, ¶ 7; *State ex rel. Lackey v. Indus. Comm.*, 129 Ohio St.3d 119, 2011-Ohio-3089, ¶ 11; *State ex rel. Roxbury v. Indus. Comm.*, 138 Ohio St.3d 91, 2014-Ohio-84, ¶ 11.  We note that the commission's order expressly states that "the Injured Worker's application must be denied due to her abandonment of the entire job market by virtue of her retirement from this Employer effective 06/12/2012."

{¶ 9}   Respondents also argue that *Pretty Prods.* does not preclude the application of the voluntary abandonment doctrine under the circumstances presented here.  We agree. Unlike *Pretty Prods.*, which involved TTD compensation and a voluntary abandonment of employment based on termination due to a post-injury work-rule violation, the case at bar involves a retirement and abandonment of the workforce, and then a subsequent application for PTD compensation.  Therefore, *Pretty Prods.* is inapplicable.

{¶ 10} Lastly, respondents object to the magistrate's conclusion that the commission's order "strongly suggests" that the commission did not consider all of the evidence submitted regarding relator's medical condition at or near the time of retirement as required by Ohio Adm.Code 4121-3-34(D)(1)(d). Respondents essentially contend that this conclusion is another example of the magistrate improperly substituting his judgment for that of the commission by relying on evidence that the commission found unpersuasive. We agree with respondents.

{¶ 11} It is well-established that the commission need only enumerate the evidence relied upon to reach its decision. *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481, 483-84 (1983). Generally, the commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive. Courts have recognized an exception to this general rule when it is clear that the commission intended to list all the evidence before it, but omits a particular document from that list. In these situations, courts may presume that the document was overlooked. *State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, ¶ 16-18.

{¶ 12} The magistrate notes that the commission fails to identify and discuss Dr. Lehner's March 26, 2012 office note. In this office note, Dr. Lehner discusses both relator's intention to retire in the near future and her concern that she might not be able to perform all aspects of her job duties if she were to return to her position of employment. Relator expressed concerned that she might not be capable of helping out in dealing with a combative special needs client. Dr. Lehner states that "I cannot really fault her for that at this point." Referencing the state of her rehabilitation, Dr. Lehner states that relator "probably could go back to work pretty soon. I would still put her on some restrictions."

{¶ 13} The magistrate takes issue with the commission's finding that there is no medical evidence that a physician advised relator to retire from the workforce. According to the magistrate, this finding indicates that the commission did not consider Dr. Lehner's March 26, 2012 office note. The magistrate interprets Dr. Lehner's statement that "I cannot really fault her for that at this point," as referring to her intention to retire and as "consistent with and similar to an advisement to retire." Because there is no mention or

discussion of this office note in the commission's order, the magistrate concludes that the commission did not consider it, thereby violating Ohio Adm.Code 4121-3-34(D)(1)(d).

{¶ 14} We fail to discern from the commission's order that it intended to list all the evidence before it. Therefore, we see no reason to deviate from the general rule that the commission need only enumerate the evidence it relied upon to support its decision. There was no need for the commission to identify and discuss Dr. Lehner's office note if it did not rely upon it. We also agree with respondents that the magistrate improperly substituted his judgment for that of the commission by interpreting the meaning and impact of Dr. Lehner's March 26, 2015 note, particularly with respect to whether it reflects an advisement to abandon the workforce due to her industrial injury. At most, the comment refers only to the circumstances of relator's current employment. Because the commission did not rely upon this office note, it had no obligation to identify or discuss it. Because we presume the commission considered all evidence before it, we agree with respondents that the commission's order does not violate Ohio Adm.Code 4121-3-34(D)(1)(d).

{¶ 15} Because there is some evidence to support the commission's decision that relator voluntarily abandoned the workforce, the commission did not abuse its discretion when it denied relator PTD compensation. Therefore, we sustain respondents' objections.

{¶ 16} Following an independent review of this matter, we find that the magistrate improperly substituted his judgment for that of the commission in determining that relator's abandonment of the workforce was caused by her industrial injury. We adopt the magistrate's findings of fact but not his conclusions of law. Accordingly, we deny relator's request for a writ of mandamus.

*Objections sustained; writ of mandamus denied.*

LUPER SCHUSTER, J., concurs.
TYACK, J., dissents.

TYACK, J. dissenting.

{¶ 17} Since I agree with our magistrate's analysis of the pertinent issues, I respectfully dissent.

{¶ 18} There is no indication that Elizabeth A. Washington could resume the employment she had before she was injured. She would have immediately been entitled

to temporary total disability ("TTD") compensation but, instead, entered into agreements under which her wages were continued and her accumulated sick leave was used.

{¶ 19} Washington started a work conditioning program and physical therapy. These are not the actions of a woman who is abandoning the workforce. At the same time, she had serious doubts that she could physically handle combative patients, which was part of her job.

{¶ 20} Finally, she moved for TTD. Soon thereafter, she had a third back surgery. In May 2013, a commission specialist found that she had reached maximum medical improvement. Stated in lay terms, she was not going to get significantly better anytime soon. As a result, five months later yet, she applied for permanent total disability compensation ("PTD").

{¶ 21} In November 2013, as a result of the filing for PTD, a different commission specialist reported that she was capable of sedentary activity with a long list of restrictions. In the meantime, she had applied for payment of the retirement benefits she had earned with the Ohio Public Employees Retirement System ("OPERS"). The fact that she applied for benefits she had earned through membership in OPERS, does not tell you that she abandoned the entire workforce, let alone voluntarily abandoned the workforce over six months before her third back surgery. This raises the question of exactly when Washington supposedly abandoned the workforce, an issue not really addressed at the Industrial Commission. I also note Washington testified at her hearing that she could not continue working as a result of her injuries. Her treating physician of many years agreed.

{¶ 22} I would return this case to the Industrial Commission of Ohio with instructions to determine if Elizabeth Washington is entitled to PTD compensation. I would adopt our magistrate's detailed and well-written decision. Since the majority of this panel does not do so, I dissent.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.                          :
Elizabeth A. Washington,

                                               :

           Relator,

                                               :

v.                                                           No. 14AP-445

                                               :

Industrial Commission of Ohio and                         (REGULAR CALENDAR)
Montgomery County,                             :

           Respondents.                        :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 18, 2015

---

*E.S. Gallon & Associates,* and *Corey L. Kleinhenz*, for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Mathias H. Heck, Jr.,* Prosecuting Attorney, *Todd M. Ahearn* and *Jonathan A. Ketter,* for respondent Montgomery County.

---

IN MANDAMUS

{¶ 23} In this original action, relator, Elizabeth A. Washington, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation on grounds that she voluntarily abandoned the workforce, and to enter an order that adjudicates the application based upon the merits of the medical and non-medical

evidence submitted on the application absent the finding of a voluntary abandonment of the workforce.

Findings of Fact:

{¶ 24} 1. On April 27, 1999, relator injured her lower back while employed as a "workshop specialist" for respondent Montgomery County, a state-fund employer.

2. The industrial claim (No. 99-385310) is allowed for:

Sprain lumbar region, bilateral; sprain of right hand; aggravation of degenerative spondylolisthesis L4-5; stenosis at L3-4; facet arthritis; impingement L3 nerve root, lumbar; bilateral foraminal stenosis at L5-S1.

{¶ 25} 3. On July 26, 2003, relator underwent low back surgery performed by orthopedic surgeon James K. Lehner, M.D.  In his operative report, Dr. Lehner  describes the operation:

Decompression, L4-L5,  posterior spinal fusion, L4-L5, with spine length rods, right iliac crest bone graft.

{¶ 26} 4. On September 7, 2011, Dr. Lehner performed a second surgery to the low back.  In his operative report, Dr. Lehner describes the operation:

[One] Extension of previous L4 to L5 fusion to L3 with 360-degree fusion with interbody graft with PEEK EBI graft and array rods with revision of previous SpineLink rods to array rods.
[Two] Decompression bilaterally at L3-L4 with partial facetectomies.

{¶ 27} 5. On September 8, 2011, Dr. Lehner completed a C-84 on which he certified temporary total disability from September 6, 2011 to and estimated return to work date of February 23, 2012.  In response to the C-84 queries, Dr. Lehner indicated that relator cannot return to her former position of employment nor can she return to other employment.

{¶ 28} 6. Following the September 7, 2011 surgery, relator briefly returned to transitional duty at Montgomery County, but this ended in December 2011.

{¶ 29} 7. In early March 2012, relator and her employer executed a "Salary Continuation Agreement" on form C-55 in which it was agreed that relator's full

salary/wages would be paid in lieu of temporary total disability ("TTD") compensation from February 27 to March 23, 2012.

{¶ 30} 8. In early April 2012, relator and her employer executed another C-55 form on which it was agreed that relator's full salary/wages would be paid in lieu of TTD compensation from March 24 to April 20, 2012.

{¶ 31} 9. Apparently, following the payment of salary/wage continuation, relator was paid sick leave.  However, in an affidavit executed by relator on September 12, 2012, relator states that she was "placed on sick leave as of February 27, 2012" and "was paid sick leave through May 31, 2012."

{¶ 32} 10. Earlier, on February 28, 2012, Chris McGlaughlin, Physical Therapist and Clinical Director of Sports Therapy, Inc., reported to Dr. Lehner:

> Ms. Washington has completed 5.5 weeks of her prescribed work-conditioning program and 4 weeks of her active physical therapy program. Ms. Washington has demonstrated a good level of effort and compliance throughout. * * *
>
> Ms. Washington remains appropriate for continued skilled care in order to achieve the remaining functional goals and maximize her employability.
>
> * * *
>
> Plan: Continue with a work-conditioning program on a schedule of 4-5x/ week for 2.5 weeks. A functional re-assessment will be completed in ~2 weeks in order to assure adequate progress towards stated goals and make additional recommendations as required, such as progression into a work-hardening program.
>
> Prognosis: Good

{¶ 33} 11. On March 26, 2012, relator visited Dr. Lehner for further evaluation. Dr. Lehner reported:

> Ms. Washington returned today and there were a few things that we had to talk about with her back. She is possibly going to retire here in the near future. She does not feel that she can do the kind of work that she has been doing with the special needs clients tha[t] she deals with because, every once in a while, one will get combative and she does not

think that she can handle them. She is going to try to seek retirement. We have an evaluation with the work hardening people and they say that she has maxed out well enough that she probably could go back to work pretty soon. I would still put her on some restrictions. The problem is just the situation where there is a possibly combative person. It could be somebody in the room that she is working with or even the one next door and she is called over to help out and she just does not feel that she is capable of doing that. I cannot really fault her for that at this point.

* * *

ASSESSMENT/PLAN: * * * I will see her back again in three months. A lot of things have changed as far as her retirement situation. Right now, she is apparently applying for all of this to be done now and, if she does, there may be some significant changes between now and three months from now.

{¶ 34} 12. On March 26, 2012, Dr. Lehner completed a "Physician's Report of Work Ability" on a form provided by the Ohio Bureau of Workers' Compensation ("bureau"). The form is designated as the Medco-14. Thereon, Dr. Lehner indicated that relator may return to work with restrictions from April 1 to June 30, 2012 and that the restrictions were temporary. One of the restrictions was no lifting of over 20 pounds.

{¶ 35} 13. On March 26, 2012, the Ohio Public Employees Retirement System ("OPERS") received relator's retirement application.

{¶ 36} 14. By letter dated March 29, 2012, OPERS informed relator:

Your Traditional Pension Plan retirement application was received March 26, 2012. Unless you were paid for time you worked beyond the date indicated on your application for retirement, your benefit is effective on June 1, 2012. * * *

You have selected Single Life Benefit as the payment plan. This benefit will be paid to you throughout your life only and terminates at your death with no further payment.

{¶ 37} 15. The record contains a "Vocational Rehabilitation Closure Report," which is a form ("RH-21") provided by the bureau. On April 2, 2012, the bureau closed relator's rehabilitation case as indicated by an RH-21 completed by relator's case manager Cindi Gilloti. The RH-21 closure report states:

Ms. Washington participated in active PT through Sports Therapy in Englewood. She was compliant with her attendance and demonstrated good effort. She made steady gains through her PT program and the therapist indicated that she would be ready to start work conditioning earlier than anticipated. Ms. Washington stated agreement with this and she transitioned into the work conditioning program.

Through the work conditioning program, Ms. Washington did notice an increase in her pain symptoms. She increased her hours of attendance, work tasks and days of participation. The therapists worked with her to try to decrease her pain through exercise and also decreased her number of days of participation per week for a period of time. The therapist also provided her a TNS unit to trial [sic] while she was participating in the program and she stated that she did feel this was beneficial to her. Her [physician of record] has requested purchase of a TNS unit.

Ms. Washington reported that although she noted significant improvement in her strength, endurance and overall physical conditioning, she started to question whether she was going to be able to maintain the physical demands of her job on a daily basis. She reported that she spoke to the HR rep[resentative] through Montgomery County and learned that because she is 64 and has 21 years of service, she was eligible to apply for retirement. Ms. Washington reported that she was considering toward the end of her work conditioning program, but did not make a final decision and apply for these services until she completed work conditioning. Ms. Washington did not receive Living Maintenance while she was in the vocational rehabilitation plan as she utilized her sick leave through her [employer of record] for her pay while in this program.

This case manager met with Ms. Washington and her [physician of record] on 3/26/12 and he provided a release to return to work with restrictions. This case manager forwarded this Medco-14 to Ms. Washington's [employer of record], even though Ms. Washington did state her intention to apply for retirement. Jodi Fair, Montgomery County, stated that they do not have a position available within her restrictions and indicated an awareness that Ms. Washington filed a request for retirement. At this time, Ms. Washington's retirement application has been approved and her retirement through Montgomery County will be effective

6/1/12. Per the [employer of record], Ms. Washington will remain on sick leave until her retirement benefits begin.

{¶ 38} 16. On June 12, 2012, Dr. Lehner completed another C-84 based upon his most recent examination of March 26, 2012. On the C-84, Dr. Lehner certified TTD from September 6, 2011 to an estimated return to work date of September 10, 2012.

{¶ 39} 17. On June 25, 2012, relator visited Dr. Lehner. Dr. Lehner reported:

Mrs. Washington came back today and she has some complaints with her back. However, the thing that really worries me today is that she has complaints of numbness on the whole right side of her body and her grip strength does not seem all that good to me on the right hand. She does not give any incident of one particular time that there was some problem, but she acts like she has some weakness that I would even have to say could be a stroke. She has no problem with vision and she does not notice any troubles on the left side and it is just more of a feeling of numbness and soreness on the whole right side of her body. I can only tell that her grip strength seems a little bit weak to me. She walks around and I cannot limit this to saying that the right side is worse than the left with ambulation, but she just walks with a shuffling-type gait here in the office.

I have a feeling that we have to rule out if something is going on, particularly with her head, but also her cervical spine with the numbness going out to the right hand.

* * *

ASSESSMENT/PLAN: With the arm and the leg getting more numbness, I have to look into an area that could cause troubles with these and that would be a cervical spine and head MRI. I ordered that today and we will get that back.

{¶ 40} 18. On August 21, 2012, citing the June 12, 2012 C-84 from Dr. Lehner, relator moved for TTD compensation starting June 1, 2012. In further support, relator cited to *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5 (1996).

{¶ 41} 19. On September 13, 2012, the bureau issued an order awarding TTD compensation beginning June 1, 2012. Citing Dr. Lehner's C-84, the order briefly explains: "[t]he injured worker is entitled to Temporary total compensation in relation to the Pretty Products Court Case."

{¶ 42} 20. Apparently, the September 13, 2012 bureau order was not administratively appealed.

{¶ 43} 21. On November 21, 2012, relator underwent a third low back surgery performed by Dr. Lehner. In his operative report, Dr. Lehner describes the operation: "Bilateral partial facetectomy and foraminotomy at L5-S1."

{¶ 44} 22. On May 20, 2013, Dr. Lehner wrote:

> Elizabeth returned today. She is in a situation in which she has what I would identify as chronic pain. Her back is bothering her mainly here and she has low back pain. She has had degenerative troubles with her back in the past and I think that we are in a situation now that everything is what I would call complicated, but pretty much chronic at this point.

{¶ 45} 23. On May 23, 2013, at the bureau's request, relator was examined by James Sardo, M.D. In his five-page narrative report, Dr. Sardo opines:

> In my medical opinion, the injured worker has reached maximum medical improvement. She has undergone three back surgeries and continues to experience persistent back pain. She likely will require ongoing maintenance treatment with pain management to maintain her current level of function. However, at this point, I would not expect any fundamental, functional, or physiologic change within a reasonable medical probability in spite of continuing medical or rehabilitative procedures.
>
> * * *
>
> The injured worker would be unable to return to her former position of employment.

{¶ 46} 24. On July 1, 2013, the bureau issued an order that terminates TTD compensation effective May 19, 2013 based upon Dr. Lehner's May 20, 2013 report. The bureau determined that the injured worker had reached maximum medical improvement ("MMI").

{¶ 47} 25. Apparently, the July 1, 2013 bureau order was not administratively appealed.

{¶ 48} 26. On August 13, 2013, Dr. Lehner wrote:

> Elizabeth has been a patient of mine for many years. I have treated her for spondylolisthesis and spinal stenosis. She has had three surgeries by me in the past. Based on my treatment, observation, examinations and her previous three surgeries I do feel that she is indeed permanently and totally disabled.

{¶ 49} 27. On August 19, 2013, relator filed an application for PTD compensation.

{¶ 50} 28. On November 18, 2013, at the commission's request, relator was examined by James B. Hoover, M.D. In his five-page narrative report dated November 19, 2013, Dr. Hoover opined:

> She is restricted to a sedentary level of physical activity, with limited standing and walking, only a few minutes at one time up to two hours per eight-hour day. She would have no bending, stooping, crawling, or climbing. She would be capable of lifting up to 10 lbs. on an occasional basis. There would be no restrictions for the right wrist or hand.

{¶ 51} 29. In December 2013, Dr. Hoover completed a commission form on which he indicated by his mark that relator is capable of "sedentary work."

{¶ 52} 30. Following a March 5, 2014 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application solely on eligibility grounds. That is, the SHO determined that relator not only voluntarily abandoned her employment at Montgomery County, but she also voluntarily abandoned the workforce. The SHO did not render a determination of residual functional capacity, Ohio Adm.Code 4121-3-34(B)(4), although the report of Dr. Hoover was discussed. Because residual functional capacity was not determined, the SHO did not consider the non-medical factors as set forth at Ohio Adm.Code 4121-3-34(D)(2)(b).

{¶ 53} 31. The SHO's order of March 5, 2014 explains:

> After full consideration of the issue, it is the order of the Staff Hearing Officer that the [sic] Ms. Washington's IC-2 Application for Permanent Total Disability Compensation benefits filed 08/19/2013 be denied.
> Ms. Washington was injured in the course of and arising out of her employment as a work shop specialist on 04/27/1999 when she slipped at work injuring her right hand and her back.

In support of her application, Ms. Washington has submitted a brief medical report from her treating physician, Dr. James Lehner, dated 08/13/2013. Ms. Washington has also submitted a vocational rehabilitation assessment from Mr. Stephen Phillips dated 01/21/2014.

The Injured Worker was examined at the request of the Industrial Commission of Ohio by Dr. James B. Hoover on 11/18/2013 with regard to her pending permanent total disability application. In the opinion of Dr. Hoover, the allowed conditions in the claim have reached maximum medical improvement and are permanent with a resulting 20% whole person impairment.

Dr. Hoover further opined that the Injured Worker is capable of work at a sedentary level.

Both parties to this proceeding acknowledged that the allowed conditions in the claim have reached maximum medical improvement and are permanent.
At today's hearing, the Employer's legal counsel raised as part of its defense to Ms. Washington's application the argument that her "*voluntary*" retirement from employment bars her present permanent total disability application. Ohio Revised Code, section 4123.58(D)(3).

The Staff Hearing Officer is persuaded, based upon the preponderance of evidence in file and adduced at hearing, that the Injured Worker's application must be denied due to her abandonment of the entire job market by virtue of her retirement from this Employer effective 06/01/2012.

As noted by the Ohio Supreme Court on a number of occasions, an Injured Worker's eligibility for permanent total disability compensation may be affected if the Injured Worker is voluntarily retired or abandoned the job market for reasons not related to the industrial injury. ***State ex rel. Baker Material Handling Corp. v. Indus. Comm.,*** 69 Ohio St.3d 202 (1994) and ***State ex rel. Black v. Indus. Comm.,*** 137 Ohio St.3d 75 (2013).

The courts of Ohio have recognized a two-part test for determining whether a pre-permanent total disability retirement bars an application for permanent total disability benefits. This test requires that a determination be made whether the Injured Worker's retirement was injury induced, and whether the Injured Worker intended to abandon the

entire job market. Medical evidence is most relevant in regard to the first prong of this analysis. Evidence of subsequently attempted work and/or job search is most relevant in regard to the second aspect of this analysis.

When evidence of voluntary removal or retirement is brought into issue, the Hearing Officer shall consider evidence that is submitted of the Injured Worker's medical condition at or near the time of removal/retirement. Ohio Administrative Code 4121-3-34(D)(1)(d).

After conducting a thorough review of the Injured Worker's file, and after having queried the Injured Worker regarding her retirement decision, the Staff Hearing Officer finds that there is no medical evidence that the Injured Worker was advised to retire due to this industrial injury by her treating physicians. The Injured Worker acknowledged the absence of such medical evidence at today's hearing.

The only document submitted to file by the parties regarding the Injured Worker's retirement application is a letter dated 03/29/2012 from Ohio PERS. The letter, which is addressed to the Injured Worker, advised her that her *"Traditional Pension Plan retirement application was received March 26, 2012."* The letter goes on to advise the Injured Worker that her retirement was effective June 1, 2012.

The Staff Hearing Officer further finds that the medical evidence and vocational rehabilitation evidence, at and near the time of the Injured Worker's retirement does not establish that her retirement was based upon a disability arising from this industrial injury.

By MEDCO-14 dated 03/26/2012, the Injured Worker's treating physician, Dr. James Lehner released her to return to work with restrictions for a period commencing 04/01/2012 and continuing through an estimated 06/30/2012. The Staff Hearing Officer finds that Dr. Lehner's release to return to restricted employment was consistent with the sports therapy report dated 02/28/2012. According to that report, addressed to Dr. Lehner, the Injured Worker had completed five and a half weeks of prescribed work conditioning and four weeks of active physical therapy. According to physical therapist McGlaughlin, the Injured Worker demonstrated a *"good level of effort and compliance throughout."* He further opined that the Injured Worker *"remains appropriate for*

*continued skilled care in order to achieve the remaining functional goals and maximize her employability."*

The Injured Worker's vocational rehabilitation file was closed effective 04/02/2012 for the reason that she *"chose to retire."* A review of the closed report finds no reference whatsoever to any recommendation by Dr. Lehner or any other treating physician that the closure of her case was necessary due to a medical reasons [sic].

In his report dated 06/25/2012, Dr. Lehner notes that the Injured Worker continued to have problems and weakness, but that he was unsure of the cause. At that time, he recommended a cervical spine and head MRI. Again, there is no recommendation at that point by Dr. Lehner that the Injured Worker should retire due to disability.

A review of the file further affirms that the Employer did not have employment within the restrictions stated by Dr. Lehner. The record further affirms that because there was no employment available with the Employer of record within the stated restrictions of Dr. Lehner, the Injured Worker decided to remain on sick leave until her retirement benefits were to commence. There is no medical evidence from that time supporting the need for the Injured Worker to retire due to any disability arising from this claim.

The primary evidence relied upon by the Injured Worker in arguing that her retirement was based upon disability, and thus related to her industrial injury was her testimony today. The Injured Worker testified that: *"I know in my heart I couldn't work,"* and *"that it was due to my injury."* The Injured Worker testified that she thus decided to retire due to her injury. The Injured Worker also testified that she has made no effort whatsoever at returning to any employment since her retirement.

The Staff Hearing Officer does not find the bare testimony of the Injured Worker to be persuasive in the face of the documentary record from the time at and near the time of her retirement which establishes clearly her retirement was non-disability related.

Based upon the foregoing evidence and analysis, the Staff Hearing Officer orders that the Injured Worker's application for permanent total disability compensation be denied due to

> her voluntary abandonment of employment consisting of her retirement.
>
> This order is based upon the evidence and analysis set forth herein, as well as upon the statutory authority and code provision cited herein, and the case authority cited herein.

(Emphasis sic.)

{¶ 54} 32. On April 16, 2014, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of March 5, 2014.

{¶ 55} 33. On June 3, 2014, relator, Elizabeth A. Washington, filed this mandamus action.

Conclusions of Law:

{¶ 56} Three issues are presented: (1) whether a medical inability to return to her former position of employment at Montgomery County precluded a commission finding that relator voluntarily abandoned her employment based upon the principle set forth in *Pretty Prods.* and its progeny, (2) whether the SHO's order complies with Ohio Adm.Code 4121-3-34(D)(1)(d)'s requirement that "the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement," and (3) whether the commission abused its discretion in determining that relator voluntarily abandoned the workforce subsequent to her retirement at Montgomery County.

{¶ 57} The magistrate finds: (1) a medical inability to return to her former position of employment at Montgomery County precluded a commission finding that relator voluntarily abandoned her employment based upon the principle set forth in *Pretty Prods.* and its progeny, (2) the SHO's order does not comply with Ohio Adm.Code 4121-3-34(D)(1)(d), and (3) the commission abused its discretion in determining that relator voluntarily abandoned the workforce subsequent to her retirement at Montgomery County.

{¶ 58} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

**Basic Law**

{¶ 59} Paragraph two of the syllabus of *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 69 Ohio St.3d 202 (1994), states:

> [Two] An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market.

*Id.* at 202.

{¶ 60} Ohio Adm.Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications.

{¶ 61} Ohio Adm.Code 4121-3-34(D)(1)(d), states:

> If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself or herself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.

{¶ 62} The commission may characterize retirement as voluntary based on a lack of contemporaneous medical evidence of disability. *State ex rel. Cinergy Corp./Duke Energy v. Heber,* 130 Ohio St.3d 194, 2011-Ohio-5027, ¶ 7. However, it is not required to do so because there may be other evidence that substantiates the connection between injury and retirement. *Id.*

{¶ 63} This court has held that the commission may find that a retirement was injury-induced in the absence of evidence that a physician advised the worker to retire. *State ex rel. Hart v. Indus. Comm.,* 10th Dist. No. 12AP-77, 2013-Ohio-1155, ¶ 14, citing this court's decision in *State ex rel. Black v. Indus. Comm.,* 10th Dist. No. 10AP-1168, 2012-Ohio-2589, ¶ 18, reversed on other grounds *State ex rel. Black v. Indus. Comm.,* 137 Ohio St.3d 75, 2013-Ohio-4550; *State ex rel. AT&T Teleholdings, Inc. v. Indus. Comm.,* 10th Dist. No. 11AP-369, 2012-Ohio-3380, ¶ 19.

{¶ 64} Two related cases involving TTD compensation are relevant here to the commission's adjudication of the PTD application.

{¶ 65} In *Pretty Prods.,* TTD compensation was denied on voluntary abandonment grounds. Claimant, Maxine Dansby, had been terminated from her employment for her failure to produce a medical excuse slip that extended her disability. In granting a writ of mandamus ordering the commission to clarify its earlier order, the *Pretty Prods.* court pronounced:

> The timing of a claimant's separation from employment can, in some cases, eliminate the need to investigate the character of departure. For this to occur, it must be shown that the claimant was already disabled when the separation occurred. "[A] claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal." *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 48, 623 N.E.2d 55, 58.

*Id.* at 7.

{¶ 66} In *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.,* 117 Ohio St.3d 71, 2008-Ohio-499, the court clarified the rationale set forth in *Pretty Prods.* and explained the relationship to *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401 (1995):

> *Pretty Prods.* was decided shortly after *Louisiana–Pacific.* In *Pretty Prods.,* we held that the character of the employee's departure—i.e., voluntary versus involuntary—is not the only relevant element and that the timing of the termination may be equally germane. In *Pretty Prods.,* we suggested that a claimant whose departure is deemed voluntary does not surrender eligibility for temporary total disability compensation if, at the time of departure, the claimant is still temporarily and totally disabled. Id., 77 Ohio St.3d at 7, 670 N.E.2d 466; *State ex rel. OmniSource Corp. v. Indus. Comm.,* 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41, ¶ 10. Thus, even if a termination satisfies all three *Louisiana–Pacific* criteria for being a voluntary termination, eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred.

*Id.* at ¶ 10.

**First Issue**

{¶ 67} Relator argues that the bureau's September 13, 2012 order awarding TTD compensation beginning June 1, 2012—an order that was not administratively appealed—bars the commission from determining that she voluntarily abandoned her employment at Montgomery County when it is undisputed that her OPERS retirement began June 1, 2012. Relator cites to *Pretty Prods.* for support of the argument. Relator further argues that the principles of res judicata and collateral estoppel require that the commission give effect to the bureau's TTD award in the adjudication of the PTD application.

{¶ 68} Relator's argument is flawed because the record undisputedly shows that the retirement application was received by OPERS on March 26, 2012, some two months prior to the bureau's TTD award. Thus, relator's decision to retire was obviously made on or before March 26, 2012. In fact, relator discussed her retirement decision at her March 26, 2012 visit with Dr. Lehner.

{¶ 69} However, the record undisputedly shows that relator and her employer executed two agreements for salary/wage continuation covering the period from February 27 to April 20, 2012. In the view of the magistrate, the execution of the salary/wage continuation agreement bars the commission from finding a voluntary abandonment of employment under the rationale set forth in *Pretty Prods.* and *Reitter Stucco.*

{¶ 70} Accordingly, based upon the above analysis, it is clear that the commission abused its discretion in finding that relator voluntarily abandoned her employment at Montgomery County.

**Second Issue**

{¶ 71} The second issue, as earlier noted, is whether the SHO's order complies with Ohio Adm.Code 4121-3-34(D)(1)(d)'s requirement that "the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement."

{¶ 72} The magistrate finds that the SHO's order of March 5, 2014 strongly suggests that the March 26, 2012 report (office note) of Dr. Lehner was not considered even though it is clearly evidence of relator's medical condition at or near the time of relator's decision to retire. Again, the March 26, 2012 report, states:

Ms. Washington returned today and there were a few things that we had to talk about with her back. She is possibly going to retire here in the near future. She does not feel that she can do the kind of work that she has been doing with the special needs clients tha[t] she deals with because, every once in a while, one will get combative and she does not think that she can handle them. She is going to try to seek retirement. We have an evaluation with the work hardening people and they say that she has maxed out well enough that she probably could go back to work pretty soon. I would still put her on some restrictions. The problem is just the situation where there is a possibly combative person. It could be somebody in the room that she is working with or even the one next door and she is called over to help out and she just does not feel that she is capable of doing that. I cannot really fault her for that at this point.

{¶ 73} Given that the March 26, 2012 report of Dr. Lehner is not mentioned in the SHO's order of March 5, 2014, the following portions of the order strongly suggest that the March 26, 2012 report of Dr. Lehner was not considered.

{¶ 74} The 12th paragraph of the SHO's order (as quoted above), states in full:

After conducting a thorough review of the Injured Worker's file, and after having queried the Injured Worker regarding her retirement decision, the Staff Hearing Officer finds that there is no medical evidence that the Injured Worker was advised to retire due to this industrial injury by her treating physicians. The Injured Worker acknowledged the absence of such medical evidence at today's hearing.

{¶ 75} The 17th paragraph of the SHO's order states in full:

In his report dated 06/25/2012, Dr. Lehner notes that the Injured Worker continued to have problems and weakness, but that he was unsure of the cause. At that time, he recommended a cervical spine and head MRI. Again, there is no recommendation at that point by Dr. Lehner that the Injured Worker should retire due to disability.

{¶ 76} The 18th paragraph of the SHO states in full:

A review of the file further affirms that the Employer did not have employment within the restrictions stated by Dr. Lehner. The record further affirms that because there was no employment available with the Employer of record within the stated restrictions of Dr. Lehner, the Injured Worker decided to remain on sick leave until her retirement benefits

were to commence. There is no medical evidence from that time supporting the need for the Injured Worker to retire due to any disability arising from this claim.

{¶ 77} Pertinent here is the decision of the Supreme Court of Ohio in *State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, wherein it held that a commission order denying TTD compensation was an abuse of discretion for the failure to consider Dr. Gutheil's questionnaire. The court explained:

> The second concern relates to the commission's lack of reference to Dr. Gutheil's questionnaire. Under most circumstances, such an omission would be inconsequential. As appellees correctly indicate, the commission need only enumerate the evidence relied upon to reach its decision. *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 483–484, 6 OBR 531, 453 N.E.2d 721. The commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive. *State ex rel. DeMint v. Indus. Comm.* (1990), 49 Ohio St.3d 19, 20, 550 N.E.2d 174.
>
> There is, however, an important exception to this general rule. When the commission, for whatever reason, elects to list all evidence before it, but omits a particular document from that recitation, we will presume that the document was overlooked. *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 329, 631 N.E.2d 1057. If that document could influence the outcome of the matter in question, we will return the matter to the commission for further consideration. Id.
>
> The order now at issue does not contain an actual itemized list of the evidence as *Fultz* did. Nevertheless, the order states, "All relevant evidence was reviewed and considered." In addition, the order did discuss all of the evidence presented except for Dr. Gutheil's questionnaire. We consider this to be significant, because the tenor of the commission's order is that there is no evidence that certifies disability before September 20, 2005. But Dr. Gutheil's responses do allege disability prior to that date, so it is important that the commission also consider that document.

*Id.* at ¶ 16-18.

{¶ 78} Analysis begins with the observation that the SHO states there is no medical evidence that a physician *advised* relator to retire when Dr. Lehner states in his March 26, 2012 report following a discussion of relator's decision to retire: "I cannot really fault her for that at this point."

{¶ 79} Arguably, it can be said that Dr. Lehner did not actually *advise* relator to retire. Nevertheless, his stated agreement with her retirement decision is consistent with and similar to an advisement. To state that there is no physician advisement to retire without a mention of the March 26, 2012 report strongly suggests that the report was not considered.

{¶ 80} Moreover, the SHO's order is flawed for suggesting that a physician's advisement to retire is a prerequisite for a finding of an involuntary retirement. This court has held to the contrary. *Hart.*

{¶ 81} In the 17th paragraph of the order, the SHO is focused upon the June 25, 2012 report of Dr. Lehner issued weeks after the June 1, 2012 effective date of the retirement and months after the March 26, 2012 retirement discussion with Dr. Lehner. Under the circumstances, one would not expect Dr. Lehner to recommend retirement *after* the retirement became effective. Thus, the 17th paragraph of the order is seriously flawed for suggesting that the lack of a recommendation in the June 25, 2012 report of Dr. Lehner is evidence that the retirement was not injury-induced.

{¶ 82} In the 18th paragraph of the order, the SHO seems to state that there is no contemporaneous medical evidence supporting an injury-induced retirement during the time relator was on sick leave. Relator was paid sick leave through May 31, 2012. Apparently, she was placed on sick leave following the April 20, 2012 termination of the salary/wage continuation agreement, although the sick leave start date is not entirely clear. In any event, the March 26, 2012 report of Dr. Lehner is clearly medical evidence of an injury-induced retirement that is contemporaneous with the date of the actual retirement decision. Accordingly, the 18th paragraph of the SHO's order is seriously flawed.

{¶ 83} Based upon the above analysis, the magistrate concludes that the commission abused its discretion by failing to comply with Ohio Adm.Code 4121-3-

34(D)(1)(d)'s requirement that "the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement."

### Third Issue

{¶ 84} The third issue, as previously noted, is whether the commission abused its discretion in determining that relator voluntarily abandoned the workforce subsequent to her retirement at Montgomery County.

{¶ 85} In the March 5, 2014 order, following the determination that relator's abandonment of her employment at Montgomery County was not injury-induced and therefore was voluntary, the SHO further determined that relator voluntarily abandoned the workforce based upon relator's hearing testimony "that she made no effort whatsoever at returning to any employment since her retirement."

{¶ 86} Relator's retirement was effective June 1, 2012.  On November 21, 2012, some five to six months after the effective retirement date, relator underwent her third low back surgery performed by Dr. Lehner.  On August 19, 2013, some nine months after her third low back surgery, relator filed her PTD application.

{¶ 87} Moreover, the SHO's order never actually adopted the November 18, 2013 report of Dr. Hoover who opined that the allowed conditions of the industrial claim medically permit sedentary work.

{¶ 88} Thus, the question before the SHO was whether relator, who at best can only perform sedentary work, could be expected to search for sedentary employment during the period beginning June 1, 2012 to August 19, 2013, a period of some 14-15 months when, during the period, she underwent major low back surgery as a result of her industrial injury.

{¶ 89} The SHO's order of March 5, 2014, is seriously flawed for failing to consider the impact of relator's third low back surgery on her ability to search for, at best, sedentary employment. Accordingly, the SHO's determination that relator abandoned the workforce was an abuse of discretion.

{¶ 90} In rendering the above analysis, the magistrate relies upon *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, and its progeny.

{¶ 91} In *Pierron,* the claimant, Richard Pierron, chose to retire in 1997 after Sprint/United informed him that his light-duty warehouse position was being eliminated and that he was not being offered an alternate position. The *Pierron* court recognized that Pierron did not initiate his departure from Sprint/United and that there was no causal relationship between his industrial injury and his departure from Sprint/United. Because Pierron chose not to seek other employment following his retirement, the court held that he had voluntarily abandoned the workforce. By his own inaction over the years following his separation from Sprint/United, Pierron evinced an intent to leave the workforce.

{¶ 92} In *AT&T Teleholdings,* following the commission's award of TTD compensation, the employer filed a mandamus action in this court. In upholding the commission's award despite the employer's claim that the claimant (Deborah Warner) had voluntarily abandoned the workforce, this court compared the facts in that case with those in *Pierron.* This court noted that, in *Pierron,* a four-year period expired between retirement and the claim for a new period of TTD. This court pointed out that, in the case at bar, only one year had passed between the claimant's retirement and the proposed effective date of the claimant's second period of TTD during which the evidence supports the conclusion that the claimant continued to experience injury-related pain and decreased range of motion. *Id.* at ¶ 33, fn2.

{¶ 93} Accordingly, based upon the above analysis, the magistrate concludes that the commission abused its discretion in determining that relator voluntarily abandoned the workforce subsequent to her retirement at Montgomery County.

{¶ 94} Accordingly, for all of the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the March 5, 2014 order of its SHO that denied relator's application for PTD compensation and to enter an order consistent with this magistrate's decision that determines whether relator voluntarily abandoned the workforce, and if not, renders a determination on the merits of the application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).